| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Anerio V. Altman, Esq. #228445<br>Lake Forest Bankruptcy II, APC<br>26632 Towne Centre Drive #300<br>Foothill Ranch, CA 92610<br>Phone and Fax: (949) 218-2002<br>avaesq@lakeforestbkoffice.com<br><br><br>☐ *Individual appearing without attorney*<br>☒ *Attorney for:* DEBTOR | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION**

| In re:<br><br>MICHAEL CHRISTIAN ALEXANDER<br><br><br><br><br><br><br><br><br><br>Debtor(s). | CASE NO.: 2:25-bk-18382-VZ<br><br>CHAPTER: 13 |
|---|---|
| | **NOTICE OF MOTION FOR:**<br><br>DEBTOR'S MOTION FOR ORDER AUTHORIZING REJECTION OF AN UNEXPIRED EXECUTORY CONTRACT REGARDING THE SALE OF RESIDENTIAL REAL PROPERTY PURSUANT TO 11 U.S.C. SEC. 365<br><br><br>**(Specify name of Motion)** |
| | DATE: 11/18/2025<br>TIME: 11:00 am<br>COURTROOM: 1368<br>PLACE:<br>     255 E Temple St., Los Angeles, CA 90012 |

1. TO (*specify name*):  Motion To Reject Executory Contract

2. NOTICE IS HEREBY GIVEN that on the following date and time and in the indicated courtroom, Movant in the above-captioned matter will move this court for an Order granting the relief sought as set forth in the Motion and accompanying supporting documents served and filed herewith. Said Motion is based upon the grounds set forth in the attached Motion and accompanying documents.

3. **Your rights may be affected**. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)

---

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

4.  **Deadline for Opposition Papers:** This Motion is being heard on regular notice pursuant to LBR 9013-1. If you wish to oppose this Motion, you must file a written response with the court and serve a copy of it upon the Movant or Movant's attorney at the address set forth above no less than fourteen (14) days prior to the above hearing date. If you fail to file a written response to this Motion within such time period, the court may treat such failure as a waiver of your right to oppose the Motion and may grant the requested relief.

5.  **Hearing Date Obtained Pursuant to Judge's Self-Calendaring Procedure:** The undersigned hereby verifies that the above hearing date and time were available for this type of Motion according to the judge's self-calendaring procedures.

Date:  10/20/2025

LAKE FOREST BANKRUPTCY II, APC
Printed name of law firm

Signature

ANERIO V. ALTMAN, ESQ.
Printed name of attorney

---

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

26632 Towne Centre Drive #300, Foothill Ranch, CA 92610

A true and correct copy of the foregoing document entitled: **NOTICE OF MOTION FOR** (*specify name of motion*)
 Motion to Reject an Executory Contract

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 10/20/2025  , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) 10/20/2025  , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served)**:  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) 10/20/2025  , I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Delivery to the court per the court manual.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 10/20/2025 | ANERIO V. ALTMAN, ESQ. | |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

CM/ECF SERVICE

- **Anerio V Altman**    aaltman@ecf.courtdrive.com, lakeforestpacer@gmail.com
- **Nancy K Curry (TR)**    inquiries@trusteecurry.com, TrusteeECFMail@gmail.com
- **Marcus G Tiggs**    mtiggs@lawbwl.com, bribwl@gmail.com;18631@notices.nextchapterbk.com
- **United States Trustee (LA)**    ustpregion16.la.ecf@usdoj.gov


U.S. MAIL SERVICE CERTIFIED MAIL RETURN RECEIPT

Derik Lewis
Vantis Law Firm, APC
120 Vantis Drive Suite 300
Aliso Viejo, CA 92656-2677

Lawyers Realty Group
President/CEO Derik Lewis
7700 Irvine Center Drive Suite 800
Irvine, CA 92618

Saris Realty Group
President/CEO Derik Lewis
7700 Irvine Center Drive Suite 800
Irvine, CA 92618

1  Anerio V. Altman, Esq. #228445
   Lake Forest Bankruptcy
2  26632 Towne Centre Drive #300
   Foothill Ranch, CA 92610
3  Phone and Fax: (949) 218-2002
   avaesq@lakeforestbkoffice.com
   **ATTORNEY FOR DEBTOR**
4  **MICHAEL ALEXANDER**

5

6

7

8                  **UNITED STATES BANKRUPTCY COURT**

9        **CENTRAL DISTRICT OF CALIFORNIA-LOS ANGELES DIVISION**

10

11  In re: MICHAEL CHRISTIAN      )   **Case No.: 2:25-bk-18382-VZ**
    ALEXANDER                     )
12                                )   **Chapter: 13**
                                  )
13                                )   **DEBTOR'S MOTION FOR ORDER**
                                  )   **AUTHORIZING REJECTION OF AN**
14                                )   **UNEXPIRED EXECUTORY CONTRACT**
                                  )   **REGARDING THE SALE OF**
15                                )   **RESIDENTIAL REAL PROPERTY**
                                  )   **PURSUANT TO 11 U.S.C. § 365;**
16                                )   **DECLARATION OF MICHAEL**
                                  )   **CHRISTIAN ALEXANDER IN SUPPORT;**
17                                )   **DECLARATION OF ANERIO V.**
                                  )   **ALTMAN IN SUPPORT**
18                                )
                                  )   **JUDGE:**
19                                )   VINCENT ZURZOLO
                                  )
20                                )   **TRUSTEE:**
                                  )   NANCY CURRY
21                                )
                                  )
22  _____)

23

24                            – 1

                            MOTION

**TO THE HONORABLE VINCENT ZURZOLO, UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, ALL CREDITORS AND OTHER INTERESTED PARTIES:**

MICHAEL CHRISTIAN ALEXANDER. ("Debtor", "Mr. Alexander"), the debtor in the above-captioned chapter 13 case ("Case"), submits this *Motion for Order Authorizing Rejection of Unexpired Executory Contract Regarding the Sale of Residential Real Property Pursuant to 11 U.S.C. § 365* ("Motion"). Any terms not specifically defined herein shall have the meaning provided in the Motion.

## I. BACKGROUND[1]

This Motion is brought to terminate a listing agreement by and between the Debtor and Lawyers Realty Group ("LRG") and its attorney owner Derik Lewis. This listing agreement concerns the real property located at 6435 Green Valley Circle Unit 214, Culver City, CA 90230-8075 ("Property"). Due to LRG's failure to perform and difficulty in maintaining a working relationship with the Debtor, Debtor seeks to retain a new realtor during the Chapter 13 to sell this Property.

Pre-petition the Debtor executed a listing agreement with Lawyers Realty Group in or around December 2024. A true and correct copy of this agreement is attached as an Exhibit. Exhibit 1 to the declaration of Michael Alexander filed contemporaneously with this Motion.

Shortly before filing this bankruptcy case, his Property was in foreclosure. The Property was two days away from a Trustee Sale when he filed this bankruptcy case.

---

[1] The facts in this section unless otherwise noted are taken from the Declaration of Michael Christian Alexander filed contemporaneously with this document.

1       In or around December 2024, during his last bankruptcy case, he had retained Derik

2   Lewis, an attorney as well as the owner of LRG, to asst him with his foreclosure defense, and

3   retained his real estate firm LRG to market and sell his house.

4       Under the terms of that listing agreement, LRG had an exclusive right to list the Property

5   that lasted until December 2025.  For nine months his realtor, John Holmes, the realtor he

6   worked with at LRG, had been marketing his Property.

7       The Debtor has since lost faith in the ability of LRG to market his Property.

8       During the process of the attempt to sell, the random agents that were sent in to show the

9   Debtor's Property were unprofessional and subpar.  The agents sent out were late, became

10  regularly lost inside the complex without contacting the Debtor, causing the potential prospects

11  to be lost, or were no-shows.  All of this during was a very difficult time to sell real estate from

12  which the Debtor received many text messages from John Holmes, LRG's agent, apologizing on

13  behalf of the collapsed showings.  However, when speaking with Derik Lewis, Mr. Lewis

14  claimed that they have nothing to do with the agents who were sent out and the situations that

15  happened were not their problem.

16      The Debtor has worked with real estate agents in other industries that were representing

17  the companies worked for, and from experience he know it would have been very easy to have a

18  brief conversation ahead of time to request they handle the job more professionally since others

19  have not, or to simply call the homeowner if there is any problem whatsoever.  LRG did none of

20  this.

21      At the start, the Debtor requested assistance in reducing their commission rate of service

22  due to the exorbitant amount that was going to be lost from the sale due to the secured loans that

23

24

MOTION

1    are required to be paid.  The team was very adamant about not budging on their rate price.

2    However, post-petition, when discussing the prospect of changing real estate agents, Derik Lewis

3    and the LRG agent were suddenly now willing to negotiate a lower rate, something that, if

4    presented previously, may have prevented the situation from escalating.

5        After the petition was filed, the Debtor spoke with Derik Lewis and requested that Derik

6    Lewis allow him to try and sell the Property with a different realtor during the bankruptcy

7    matter.  He refused to release the listing.

8        Mr. Lewis informed him that as a matter of law the court would "deny the bankruptcy

9    entirely" if the Debtor rejected his contract.

10        When having the conversation with Derik Lewis to discuss his request to change to a

11    different realtor that he knew of that has sold multiple units in the complex, owns units within

12    the complex, and knows what key points about the area to be able sell the unit, the conversation

13    quickly got out of hand.  Derik Lewis became emotional about the subject, was extremely

14    disrespectful, dismissive and condescending.    He purposefully interrupted during this

15    conversation so much so that the Debtor had to ask him multiple times to stop and please allow

16    him to speak.  Things only got more heated to where expletives on both sides were repeatedly

17    used.

18        This put the Debtor off from any potential continuation of his relationship with LRG.

19        Ultimately, during the time in which LRG has represented the Debtor, no offers were

20    received.

21

22

23

24                                    - 4

1    The Debtor does not believe his relationship with LRG can be repaired, or that they are

2    the best choice to sell his Property based on their failure to perform this far into their listing

3    arrangement.

4    He has brokered an agreement with a new realtor who is ready to be retained in this

5    matter to sell his Property.

6    **II.   EVENTS IN THE BANKRUPTCY CASE**

7    The Debtor's plan is in large part funded by the sale of real property which necessitates

8    the court's intervention prior to the confirmation hearing scheduled in 2026. Exhibit 2.

9    The Debtor has filed a Chapter 13 Plan that addresses the secured claims of three

10    creditors by the sale of his Property. All three creditors are mortgage lenders with consensually

11    granted interests in the Property. The Debtor is unable to make contractual payments as they

12    come due on these mortgages and thus his plan envisions the sale of the Property addressing

13    these claims in their totality.

14    The remainder of the plan payments generated by the Debtor will be attributed toward

15    administrative, priority and unsecured obligations which are not insubstantial. Id.

16    The 341a hearing in this matter has not yet been held and is set for November 6th, 2025.

17    Debtor's Counsel contacted Mr. Lewis and implored him to allow the listing to be

18    transferred to a new realtor and to file a claim for his rejected contract in this bankruptcy case.

19    Mr. Lewis refused to do so. Attached are true and correct copies of the email correspondence

20    with his office. Exhibit 3.

21    **III.   MEMORANDUM OF POINTS AND AUTHORITIES**

22

23

24

1    Section 365(a) of the Bankruptcy Code provides, in pertinent part, that a trustee or

2    debtor-in-possession, or Debtor in a Chapter 13 matter "subject to the court's approval, may

3    assume or reject any executory contract or unexpired lease of the debtor." *See* 11 U.S.C.

4    § 365(a).    This provision allows a Debtor "to relieve the bankruptcy estate of burdensome

5    agreements which have not been completely performed." *See Stewart Title Guar.* Co. *v. Old*

6    *Republic Nat'l Title* Co., 83 F.3d 735, 741 (5th Cir. 1996) (quoting *Phoenix Exploration, Inc. v.*

7    *Yaquinto* (citing *In re Muerexco Petroleum, Inc.,* 15 F.3d 60, 62 (5th Cir. 1994)).

8    Courts routinely approve motions to assume, assume and assign, or reject executory

9    contracts or unexpired leases upon a showing that the debtor's decision to take such action will

10    benefit the debtor's estate and is an exercise of sound business judgment. *See Orion Pictures*

11    *Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.),* 4 F.3d 1095, 1098 (2d Cir. 1993)

12    (stating that section 365 of the Bankruptcy Code "permits the trustee or debtor-in possession,

13    subject to the approval of the bankruptcy court, to go through the inventory of executory

14    contracts of the debtor and decide which ones it would be beneficial to adhere to and which ones

15    it would be beneficial to reject."). *In re Old* Carco *LLC (f/k/a Chrysler LLC),* 406 B.R. 180, 188

16    (Bankr. S.D.N.Y. 2009) ("The business judgment standard is employed by courts in determining

17    whether to permit a debtor to assume or reject a contract."). A bankruptcy court, in making its

18    determination of whether to approve rejection of a contract, need engage in "only a cursory

19    review of a [debtor]'s decision to reject the contract. Specifically, a bankruptcy court applies the

20    business judgment rule to evaluate a [debtor]'s rejection decision." *In re Pomona Valley*

21    *Medical Group, Inc.*, 476 F.3d 665, 670 (9th Cir. 2007) (quoting *Durkin v. Benedor Corp. (In re*

22    *G.I. Indust., Inc.)*, 204 F.3d 1276, 1282 (9th Cir. 2000).

23

24

1    The decision to assume or reject an executory contract or unexpired lease is a matter

2    within the "business judgment" of the trustee, debtor-in-possession or Chapter 13 Debtor.  If the

3    trustee's or debtor's business judgment has been reasonably exercised, a court should approve

4    the assumption or rejection of an unexpired lease or executory contract.  *See NLRB v. Bildisco &*

5    *Bildisco (In re Bildisco),* 682 F.2d 72, 79 (3d Cir. 1982) ("The usual test for rejection of an

6    executory contract is simply whether rejection would benefit the estate, the 'business judgment'

7    test.").  In evaluating a rejection decision under the business judgment standard, the bankruptcy

8    court should presume that the debtor-in-possession acted prudently, on an informed basis, in

9    good faith, and in the honest belief that the action taken was in the best interests of the

10    bankruptcy estate. *In re Pomona Valley Medical Group Inc.*, 476 F.3d at 670.

11    Rejection of an executory contract or unexpired lease is appropriate where rejection of

12    the contract would benefit the estate.  *See Sharon Steel Corp. v. Nat'l Fuel Gas Distribution*

13    *Corp.,* 872 F.2d 36, 39 (3d Cir. 1989).  The standard for rejection is satisfied when a trustee or

14    debtor has made a business determination that rejection will benefit the estate.  *See Commercial*

15    *Finance, Ltd. v. Hawaii Dimensions, Inc. (In re Hawaii Dimensions, Inc.),* 47 B.R. 425, 427 (D.

16    Haw. 1985) ("Under the business judgment test, a court should approve a debtor's proposed

17    rejection if such rejection will benefit the estate.").

18    The business judgment test provides a flexible standard for determining whether a debtor

19    may reject an executory contract or unexpired lease.  The inquiry focuses on the benefit to the

20    debtor estate resulting from the rejection rather than the mere unprofitability of the contract.  *See*

21    *In re Minges,* 602 F.2d 38, 43 (3d Cir. 1979).  A bankruptcy court should approve the rejection

22    of an executory contract unless it finds that the debtor-in-possession's conclusion that rejection

23

24

MOTION

1    would be advantageous is "so manifestly unreasonable that it could not be based on sound

2    business judgment, but only on bad faith, or whim or caprice." *In re Pomona Valley Medical

3    *Group, Inc.*, 476 F.3d at 671 (quoting *Lubrizol Enter. V. Richmond Metal Finishers*, 765 F.2d

4    1043, 1047 (4th Cir. 1985).

5         As set forth in the Declaration of Michael Christian Alexander, Mr. Alexander, in the

6    exercise of its business judgment, has determined that rejection of the contract with LRG is in

7    the best interest of the Estate. The relationship between Mr. Alexander and LRG, and its owner,

8    Derik Lewis has deteriorated such that the continued relationship between the parties cannot be

9    maintained. Besides the problems by and between the two parties working together, LRG failed

10   to acquire 1 offer in over 9 months and seeks to destroy the Debtor's chances to confirm a

11   Chapter 13 plan. Mr. Alexander needs to sell this Property quickly and there is no reason to

12   think that LRG will suddenly improve upon its performance. Should the listing agreement not be

13   rejected, the Debtor will be subject to the same substandard performance that he has endured for

14   the past year, with no progress made upon the liquidation of this asset.

15   ///

16

17   ///

18

19   ///

20

21   ///

22

23

24                                      - 8 -

IV.    **CONCLUSION**

Based on the foregoing, Mr. Alexander, the Debtor, respectfully requests that this Court

enter an order:

    1.    Authorizing the Debtor to reject the listing agreement with LRG effective

immediately upon entry of the order granting this Motion; and

    2.    For such other and further relief as this Court deems just and proper.

Dated:_____    Signed:_____
                                 ANERIO V. ALTMAN, ESQ.
                                 ATTORNEY FOR DEBTOR
                                 MICHAEL CHRISTIAN ALEXANDER

## DECLARATION OF ANERIO V. ALTMAN

I, ANERIO V. ALTMAN, declare as follows:

1. I am over the age of 18 years old and I am legally able and competent to testify to the following in a court of law if required to do so.

2. I am familiar with the court's CM/ECF filing system.

3. I have attached true and correct copies of the Debtor's Plan filed with the court as "Exhibit 2".

4. I had email correspondence with Derik Lewis of Lawyers Realty Group regarding their listing agreement after the petition was filed.

5. True and correct copies of that correspondence are attached as Exhibit 3 to this Motion.

6. I make the above declarations under penalty of perjury of the laws of the United States and know that they are true.

Dated: October 20, 2025          Signed:

ANERIO V. ALTMAN, ESQ.
ATTORNEY FOR DEBTOR
MICHAEL C. ALEXANDER

– 10

MOTION

**EXHIBIT 1**

Anerio V. Altman, Esq. #228445
Lake Forest Bankruptcy
26632 Towne Centre Drive #300
Foothill Ranch, CA 92610
Phone and Fax: (949) 218-2002
avaesq@lakeforestbkoffice.com
**ATTORNEY FOR DEBTOR**
**MICHAEL ALEXANDER**

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA-LOS ANGELES DIVISION

In re: MICHAEL ALEXANDER )
                             )
                             )
                             )
                             )

**Case No.: 2:25-bk-18382-VZ**

**Chapter: 13**

**DECLARATION OF MICHAEL ALEXANDER IN SUPPORT OF MOTION TO TERMINATE THE LISTING AGREEMENT OF LAWYERS REALTY GROUP**

**JUDGE:**
VINCENT ZURZOLO

**TRUSTEE:**
NANCY CURRY

- 1

DECLARATION

**I, MICHAEL ALEXANDER, declare as follows:**

1.  I am over the age of 18 years old and I am legally able and competent to testify to the following in a court of law if required to do so.

2.  I am the Debtor in this bankruptcy case.

3.  I own the real property located at 6435 Green Valley Circle Unit 214, Culver City, CA 90230-8075 ("Property").

4.  Pre-petition I executed a listing agreement with Lawyers Realty Group in or around December 2024. A true and correct copy of this agreement is attached as an Exhibit. <u>Exhibit 1.</u>

5.  I do not believe that my current realtor, Lawyers Realty Group ("LRG"), should continue to market and sell my Property.

6.  Shortly before filing this bankruptcy case, my Property was in foreclosure. The Property was two days away from a Trustee Sale when I filed this bankruptcy case.

7.  In or around December 2024, during my last bankruptcy case, I had retained Derik Lewis, an attorney, to asst me with my foreclosure defense, and retained his real estate firm LRG to market and sell my house.

8.  I did not acquire permission from the bankruptcy court to retain Mr. Lewis or his real estate firm.

9.  Under the terms of that listing agreement, LRG had an exclusive listing agreement that lasted until December 2025.

10. For nine months his realtor, John Holmes, the realtor I worked with at LRG, has been marketing my Property.

- 2

DECLARATION

11. I have since lost faith in the ability of LRG to market my Property.

12. During the process of the attempt to sell, the random agents that were sent in to show my place were unprofessional and subpar. The agents sent out were late, getting regularly lost inside the complex without calling me, causing the potential prospects to be lost, or were no-shows. All of this during was is a very difficult time to be selling real estate from which I received many text messages from John Holmes apologizing on behalf of the agents. However, when speaking with Derik Lewis, he claimed that they have nothing to do with the agents who were sent out and the situations that happened were not their problem.

13. I have worked with reps in other industries that were representing the company I worked for, and from experience I know it would have been very easy to have a brief conversation ahead of time to request they handle the job professionally since others have not, or to simply call the homeowner if there is any problem whatsoever. LRG did none of this.

14. At the start, I requested assistance in reducing their commission rate of service due to the exorbitant amount that was going to be lost from the sale due to all of the other secured loans that are required to be paid. The team was very adamant about not budging on their rate price. However, post-petition, when having a recent conversation about changing real estate agents, Derik Lewis and the LRG agent were now willing to negotiate a lower rate, something that, if presented previously, may have prevented the situation from escalating.

- 3

DECLARATION

15. Lastly, post filing, I requested that Derik Lewis allow me to try and sell the Property with a different realtor during the bankruptcy matter. He refused to release the listing.

16. He informed me that as a matter of law the court would "deny the bankruptcy entirely" if we rejected his contract.

17. When having the conversation with Derik Lewis to discuss my request to change to a different realtor that I know of that has sold multiple units in the complex, owns units within the complex, and knows what key points about the area to be able sell the unit, the conversation quickly got out of hand. Derik Lewis became emotional about the subject, was extremely disrespectful, dismissive and condescending. He purposefully interrupted during this conversation so much so that I had to ask him multiple times to stop and please allow me to speak. Things only got more heated to where expletives on both sides were repeatedly used.

18. I, as the customer should not be the one trying to bring the temperature down, but I had to request that we step back and have an adult conversation. However, at that point I knew there was no way I could continue working with a company that conducts themselves in such an unprofessional and disrespectful way in which they do business overall. It seems they are requiring a premium price for substandard service.

19. During the time in which LRG has represented me we have received no offers.

20. I do not believe my relationship with LRG can be repaired, or that they are the best choice to sell my Property.

- 4

DECLARATION

21. I have a new realtor who is ready to be retained in this matter to sell my Property.

22. I make these declarations under penalty of perjury of the laws of the United States and know that they are true.

Dated: _10/20/2025_

Signed: _Michael C. Alexander_

MICHAEL CHRISTIAN ALEXANDER

- 5

DECLARATION

Docusign Envelope ID: E9278777-D138-44E2-ABD5-5BE450D5388F



CALIFORNIA
ASSOCIATION
OF REALTORS®

## DISCLOSURE REGARDING
## REAL ESTATE AGENCY RELATIONSHIP
(As required by the Civil Code)
(C.A.R. Form AD, Revised 8/24)

☐ (If checked) This form is being provided in connection with a transaction for a leasehold interest exceeding one year as per Civil Code §§ 2079.13(j), (k), and (l).

When you enter into a discussion with a real estate agent regarding a real estate transaction, you should from the outset understand what type of agency relationship or representation you wish to have with the agent in the transaction.

**SELLER'S AGENT**
A Seller's agent under a listing agreement with the Seller acts as the agent for the Seller only. A Seller's agent or a subagent of that agent has the following affirmative obligations:
To the Seller: A Fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Seller.
To the Buyer and the Seller:
   (a) Diligent exercise of reasonable skill and care in performance of the agent's duties.
   (b) A duty of honest and fair dealing and good faith.
   (c) A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties. An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

**BUYER'S AGENT**
A Buyer's agent can, with a Buyer's consent, agree to act as agent for the Buyer only. In these situations, the agent is not the Seller's agent, even if by agreement the agent may receive compensation for services rendered, either in full or in part from the Seller. An agent acting only for a Buyer has the following affirmative obligations:
To the Buyer: A fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Buyer.
To the Buyer and the Seller:
   (a) Diligent exercise of reasonable skill and care in performance of the agent's duties.
   (b) A duty of honest and fair dealing and good faith.
   (c) A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties. An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

**AGENT REPRESENTING BOTH SELLER AND BUYER**
A real estate agent, either acting directly or through one or more salespersons and broker associates, can legally be the agent of both the Seller and the Buyer in a transaction, but only with the knowledge and consent of both the Seller and the Buyer.
In a dual agency situation, the agent has the following affirmative obligations to both the Seller and the Buyer:
   (a) A fiduciary duty of utmost care, integrity, honesty and loyalty in the dealings with either the Seller or the Buyer.
   (b) Other duties to the Seller and the Buyer as stated above in their respective sections.
In representing both Seller and Buyer, a dual agent may not, without the express permission of the respective party, disclose to the other party confidential information, including, but not limited to, facts relating to either the Buyer's or Seller's financial position, motivations, bargaining position, or other personal information that may impact price, including the Seller's willingness to accept a price less than the listing price or the Buyer's willingness to pay a price greater than the price offered.

**SELLER AND BUYER RESPONSIBILITIES**
Either the purchase agreement or a separate document will contain a confirmation of which agent is representing you and whether that agent is representing you exclusively in the transaction or acting as a dual agent. Please pay attention to that confirmation to make sure it accurately reflects your understanding of your agent's role.

The above duties of the agent in a real estate transaction do not relieve a Seller or Buyer from the responsibility to protect his or her own interests. You should carefully read all agreements to assure that they adequately express your understanding of the transaction. A real estate agent is a person qualified to advise about real estate. If legal or tax advice is desired, consult a competent professional.

If you are a Buyer, you have the duty to exercise reasonable care to protect yourself, including as to those facts about the property which are known to you or within your diligent attention and observation.

Both Sellers and Buyers should strongly consider obtaining tax advice from a competent professional because the federal and state tax consequences of a transaction can be complex and subject to change.

Throughout your real property transaction you may receive more than one disclosure form, depending upon the number of agents assisting in the transaction. The law requires each agent with whom you have more than a casual relationship to present you with this disclosure form. You should read its contents each time it is presented to you, considering the relationship between you and the real estate agent in your specific transaction. **This disclosure form includes the provisions of §§ 2079.13 to 2079.24, inclusive, of the Civil Code set forth on page 2. Read it carefully.**

Note: Real estate broker commissions are not set by law and are fully negotiable.

**I/WE ACKNOWLEDGE RECEIPT OF A COPY OF THIS DISCLOSURE AND THE PORTIONS OF THE CIVIL CODE PRINTED ON THE SECOND PAGE.**

☐ Buyer ☒ Seller ☐ Landlord ☐ Tenant _Michael C. Alexander_ _Signed by:_    **_Michael C. Alexander_** Date 12/15/2024
                       AADF4862EAF3406...
☐ Buyer ☐ Seller ☐ Landlord ☐ Tenant _____ Date _____

Agent _Signed by:_    **_Lawyers Realty Group_**    DRE Lic. # **_01870511_**
                    Real Estate Broker (Firm)
By _John Holmes_    **_John Holmes_** DRE Lic. # **_00957800_**    Date 12/14/2024
    46DA400E31C749F... (Salesperson or Broker-Associate, if any)

AD REVISED 8/24 (PAGE 1 OF 2)



EQUAL HOUSING
OPPORTUNITY

## DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 1 OF 2)

| Lawyers Realty Group, 7700 Irvine Center Dr. Irvine CA 92618 | Phone: 9495352945 | Fax: 9494856685 | 6435 Green Valley |
| John Holmes | Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com | | |

**2079.13.** As used in this section and §§ 2079.7 and 2079.14 to 2079.24, inclusive, the following terms have the following meanings: **(a)** "Agent" means a person acting under provisions of Title 9 (commencing with § 2295) in a real property transaction, and includes a person who is licensed as a real estate broker under Chapter 3 (commencing with § 10130) of Part 1 of Division 4 of the Business and Professions Code, and under whose license a listing is executed or an offer to purchase is obtained. The agent in the real property transaction bears responsibility for that agent's salespersons or broker associates who perform as agents of the agent. When a salesperson or broker associate owes a duty to any principal, or to any buyer or seller who is not a principal, in a real property transaction, that duty is equivalent to the duty owed to that party by the broker for whom the salesperson or broker associate functions. **(b)** "Buyer" means a transferee in a real property transaction, and includes a person who executes an offer to purchase real property from a seller through an agent, or who seeks the services of an agent in more than a casual, transitory, or preliminary manner, with the object of entering into a real property transaction. "Buyer" includes a vendee or lessee of real property. **(c)** "Commercial real property" means all real property in the state, except (1) single-family residential real property, (2) dwelling units made subject to Chapter 2 (commencing with § 1940) of Title 5, (3) a mobilehome, as defined in § 798.3, (4) vacant land, or (5) a recreational vehicle, as defined in § 799.29. **(d)** "Dual agent" means an agent acting, either directly or through a salesperson or broker associate, as agent for both the seller and the buyer in a real property transaction. **(e)** "Listing agreement" means a written contract between a seller of real property and an agent, by which the agent has been authorized to sell the real property or to find or obtain a buyer, including rendering other services for which a real estate license is required to the seller pursuant to the terms of the agreement. **(f)** "Seller's agent" means a person who has obtained a listing of real property to act as an agent for compensation. **(g)** "Listing price" is the amount expressed in dollars specified in the listing for which the seller is willing to sell the real property through the seller's agent. **(h)** "Offering price" is the amount expressed in dollars specified in an offer to purchase for which the buyer is willing to buy the real property. **(i)** "Offer to purchase" means a written contract executed by a buyer acting through a buyer's agent that becomes the contract for the sale of the real property upon acceptance by the seller. **(j)** "Real property" means any estate specified by subdivision (1) or (2) of § 761 in property, and includes (1) single-family residential property, (2) multiunit residential property with more than four dwelling units, (3) commercial real property, (4) vacant land, (5) a ground lease coupled with improvements, or (6) a manufactured home as defined in § 18007 of the Health and Safety Code, or a mobilehome as defined in § 18008 of the Health and Safety Code, when offered for sale or sold through an agent pursuant to the authority contained in § 10131.6 of the Business and Professions Code. **(k)** "Real property transaction" means a transaction for the sale of real property in which an agent is retained by a buyer, seller, or both a buyer and seller to act in that transaction, and includes a listing or an offer to purchase. **(l)** "Single-family residential property" or "single-family residential real property" means any of the following: (1) Real property improved with one to four dwelling units, including a leasehold exceeding one year's duration. (2) A unit in a residential stock cooperative, condominium, or planned unit development. (3) A mobilehome or manufactured home when offered for sale or sold through a real estate broker pursuant to § 10131.6 of the Business and Professions Code. **(m)** "Sell," "sale," or "sold" refers to a transaction for the transfer of real property from the seller to the buyer and includes exchanges of real property between the seller and buyer, transactions for the creation of a real property sales contract within the meaning of § 2985, and transactions for the creation of a leasehold exceeding one year's duration. **(n)** "Seller" means the transferor in a real property transaction and includes an owner who lists real property with an agent, whether or not a transfer results, or who receives an offer to purchase real property of which he or she is the owner from an agent on behalf of another. "Seller" includes both a vendor and a lessor of real property. **(o)** "Buyer's agent" means an agent who represents a buyer in a real property transaction.

**2079.14.** A seller's agent and buyer's agent shall provide the seller and buyer in a real property transaction with a copy of the disclosure form specified in § 2079.16, and shall obtain a signed acknowledgment of receipt from that seller and buyer, except as provided in § 2079.15, as follows: **(a)** The seller's agent, if any, shall provide the disclosure form to the seller prior to entering into the listing agreement. **(b)** The buyer's agent shall provide the disclosure form to the buyer as soon as practicable prior to execution of the buyer's offer to purchase. If the offer to purchase is not prepared by the buyer's agent, the buyer's agent shall present the disclosure form to the buyer not later than the next business day after receiving the offer to purchase from the buyer.
**2079.15.** In any circumstance in which the seller or buyer refuses to sign an acknowledgment of receipt pursuant to § 2079.14, the agent shall set forth, sign, and date a written declaration of the facts of the refusal.
**2079.16** Reproduced on Page 1 of this AD form.
**2079.17(a)** As soon as practicable, the buyer's agent shall disclose to the buyer and seller whether the agent is acting in the real property transaction as the buyer's agent, or as a dual agent representing both the buyer and the seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller, the buyer, and the buyer's agent prior to or coincident with execution of that contract by the buyer and the seller, respectively. **(b)** As soon as practicable, the seller's agent shall disclose to the seller whether the seller's agent is acting in the real property transaction as the seller's agent, or as a dual agent representing both the buyer and seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller and the seller's agent prior to or coincident with the execution of that contract by the seller.
CONFIRMATION: **(c)** The confirmation required by subdivisions (a) and (b) shall be in the following form:

Seller's Brokerage Firm _____ DO NOT COMPLETE. SAMPLE ONLY _____ License Number _____

Is the broker of (check one): ☐ the seller; or ☐ both the buyer and seller. (dual agent)

Seller's Agent _____ DO NOT COMPLETE. SAMPLE ONLY _____ License Number _____

Is (check one): ☐ the Seller's Agent. (salesperson or broker associate) ☐ both the Buyer's and Seller's Agent. (dual agent)

Buyer's Brokerage Firm _____ DO NOT COMPLETE. SAMPLE ONLY _____ License Number _____

Is the broker of (check one): ☐ the buyer; or ☐ both the buyer and seller. (dual agent)

Buyer's Agent _____ DO NOT COMPLETE. SAMPLE ONLY _____ License Number _____

Is (check one): ☐ the Buyer's Agent. (salesperson or broker associate) ☐ both the Buyer's and Seller's Agent. (dual agent)

**(d)** The disclosures and confirmation required by this section shall be in addition to the disclosure required by § 2079.14. An agent's duty to provide disclosure and confirmation of representation in this section may be performed by a real estate salesperson or broker associate affiliated with that broker.
**2079.18** (Repealed pursuant to AB-1289)
**2079.19** The payment of compensation or the obligation to pay compensation to an agent by the seller or buyer is not necessarily determinative of a particular agency relationship between an agent and the seller or buyer. A listing agent and a selling agent may agree to share any compensation or commission paid, or any right to any compensation or commission for which an obligation arises as the result of a real estate transaction, and the terms of any such agreement shall not necessarily be determinative of a particular relationship.
**2079.20** Nothing in this article prevents an agent from selecting, as a condition of the agent's employment, a specific form of agency relationship not specifically prohibited by this article if the requirements of § 2079.14 and § 2079.17 are complied with.
**2079.21 (a)** A dual agent may not, without the express permission of the seller, disclose to the buyer any confidential information obtained from the seller. **(b)** A dual agent may not, without the express permission of the buyer, disclose to the seller any confidential information obtained from the buyer. **(c)** "Confidential information" means facts relating to the client's financial position, motivations, bargaining position, or other personal information that may impact price, such as the seller is willing to accept a price less than the listing price or the buyer is willing to pay a price greater than the price offered. **(d)** This section does not alter in any way the duty or responsibility of a dual agent to any principal with respect to confidential information other than price.
**2079.22** Nothing in this article precludes a seller's agent from also being a buyer's agent. If a seller or buyer in a transaction chooses not to be represented by an agent, that does not, of itself, make that agent a dual agent.
**2079.23** A contract between the principal and agent may be modified or altered to change the agency relationship at any time before the performance of the act which is the object of the agency with the written consent of the parties to the agency relationship.
**2079.24** Nothing in this article shall be construed to either diminish the duty of disclosure owed buyers and sellers by agents and their associate licensees, subagents, and employees or to relieve agents and their associate licensees, subagents, and employees from liability for their conduct in connection with acts governed by this article or for any breach of a fiduciary duty or a duty of disclosure.

Published and Distributed by: REAL ESTATE BUSINESS SERVICES, LLC. *a subsidiary of the California Association of REALTORS®*
**AD REVISED 8/24 (PAGE 2 OF 2)**

**DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 2 OF 2)**

Docusign Envelope ID: E9278777-D138-44E2-ABD5-5EFE590CCB8F

CALIFORNIA
ASSOCIATION
OF REALTORS®

## RESIDENTIAL LISTING AGREEMENT
### (Exclusive Authorization and Right to Sell)
#### (C.A.R. Form RLA, Revised 7/24)

**Date Prepared:** _12/14/2024_

1.  **EXCLUSIVE RIGHT TO SELL:** _____ _Michael C. Alexander_ _____ ("Seller")
    hereby employs and grants _____ _Lawyers Realty Group_ _____ ("Broker")
    the exclusive and irrevocable right to sell or exchange the real property described as _6435 Green Valley Cir. 214_
    situated in _Culver City_ (City), _Los Angeles_ (County), California, _90230_ (Zip Code),
    Assessor's Parcel No. _4131-014-103_ ("Property") for the Listing Period specified in **paragraph 2A(1)**.

2.  **TERMS OF LISTING AGREEMENT:** The items in this paragraph are contractual terms of the Agreement. Referenced paragraphs provide further explanation. This form is 7 pages. Seller is advised to read all 7 pages.

| | Para # | Paragraph Title or Contract Term | Terms and Conditions |
|---|---|---|---|
| **A** | | **Representation** | |
| **A(1)** | 4G | **Listing Period** <br><br> **(Maximum Length)** | Beginning on _12/14/2024_ (date) Ending at 11:59 P.M. on _12/14/2025_ (date) <br><br> (Not to exceed 24 months if improved with one to four units and not owned by an entity. If Listing Period exceeds 24 months on a residential 1-4, this Agreement is void, unless Seller is a corporation, LLC or partnership.) |
| **A(2)** | | **Listing Price** | _Six Hundred Thirty-Nine Thousand_ Dollars ($_639,000.00_ ) |
| **B** | | **Property Specific Listings** | ☐ Manufactured (mobile) home (C.A.R. Form MHLA attached) <br> ☐ Probate, conservatorship or guardianship (C.A.R. Form PLA attached) |
| **C** | | **Compensation: NOTICE: The amount or rate of real estate commissions is not fixed by law. They are set by each broker individually and may be negotiable between Seller and Broker.** See attached Broker Compensation Advisory (C.A.R. Form BCA). | |
| **C(1)** | 4B | **Compensation to Seller's Broker** <br> **(only Seller's side of transaction)** | _____% of the listing price AND, if any _____ OR ☐ $ _____ ; <br> OR ☒ see attached compensation schedule. <br> (% above is based on purchase price if Seller and buyer sign a purchase agreement) |
| **C(2)** | 4C | ☒ **Additional Compensation to Seller's Broker if buyer is unrepresented** <br><br> **(Does NOT apply to dual agency)** | _____% of the purchase price AND, if any _____ OR ☐ $ _____ , <br> OR ☒ see attached compensation schedule. <br> (If Broker represents both buyer and Seller, buyer side compensation shall be specified in a separate written agreement.) |
| **C(3)** | 4D(2) | **Continuation of Right to Compensation for Broker Identified Prospective Buyers** | The Continuation Period shall be _____ calendar days after the Listing Period or any extension ("Continuation Period"). |
| **C(4)** | 4F | **Seller Obligation to Pay Previous Brokers** | Previous Listing/Other broker(s): _____ <br> Compensation to above broker(s) owed if Property transferred to: _____ |
| **D** | | **Items Intended to be Included and Excluded** | |
| **D(1)** | 5A | **Items Included** | ☐ _____ ; ☐ _____ ; ☐ _____ ; <br> ☐ _____ ; ☐ _____ ; ☐ _____ ; |
| **D(2)** | 5A | **Excluded Items** | ☐ _____ ; ☐ _____ ; ☐ _____ ; <br> ☐ _____ ; ☐ _____ ; ☐ _____ ; |
| **D(3)** | 5B | **Leased Items:** <br> ☐ Propane Tank(s); | ☐ Solar Power System(s); ☐ Alarm System(s); <br> ☐ Water Softener; ☐ _____ |
| **D(4)** | 5B | **Liened Items:** <br> ☐ Heating/Ventilation/Air conditioning systems | ☐ Solar Power System(s); ☐ Windows or Doors; <br> ☐ _____ ☐ _____ |
| **D(5)** | 5C | (a)  Smart Home Features Seller prefers to Include: _____ <br> (b)  Smart Home Features Seller prefers to Exclude: _____ | |
| **E** | | **MLS and Public Marketing** | |
| **E(1)** | | **Property will be marketed in the following MLS** | Primary _CRMLS_ See C.A.R. Form MLSA. <br> Other(s): _____ |
| **E(2)** | 11A | ☐ **Seller instructs Broker not to take or use photographs in marketing, except as required by MLS rules.** | |

© 2024, California Association of REALTORS®, Inc.
**RLA REVISED 7/24 (PAGE 1 OF 7)**

Seller's Initials ┌─Initial─┐ _MCA_ / _____

EQUAL HOUSING
OPPORTUNITY

### RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 1 OF 7)

Property Address: *6435 Green Valley Cir. 214, Culver City, 90230*                                    Date: *12/14/2024*

| F | Broker's and Owner's Duties | | |
|---|---|---|---|
| F(1) | 7B | **Timing of Presentation of Offers** | Seller instructs Broker to present all offers received as soon as practicable OR ☐ Offers shall be presented on _____ (date) or ☐ _____ days after the Property is listed as active on the MLS |
| F(2) | 7C | **Buyer Supplemental Offer Letters (Buyer Letters)** | Seller instructs Broker not to present Buyer Letters, OR ☐ Seller instructs Brokers to present Buyer Letters. If Seller requests or relies on Buyer Letters, Seller is acting against Broker's advice. |
| F(3) | 7E | **Investigation Reports** | ☒ Natural Hazard Disclosure ☐ Structural Pest Control, ☐ General Property Inspection, ☐ Homeowners Association Documents, ☒ Preliminary (Title) Report, ☐ Roof Inspection, ☐ Pool Inspection, ☐ Septic/Sewer Inspection, ☒ Other: ***Broker will order above items*** | Seller shall order and pay for any reports selected within **5 (or ____) days** of the Beginning Date of this Agreement |
| G | 20 | **Exceptions to Ownership/Title** | _____ |
| H | | ☐ Seller intends to include a contingency to purchase a replacement property as part of any transaction (see C.A.R. Form SPRP) | |
| I | | **Intentionally Left Blank** | |
| J | 12, 13 | **Seller Opt Outs** | ☐ Key safe/Lockbox ☐ Signs |
| K | | **Additional Terms** | _____ |

3.  **ADVISORIES AND ADDENDA:**

    A.  **Advisories**
        ☒ Broker Compensation Advisory (C.A.R. Form BCA)       ☐ REO Advisory Listing (C.A.R. Form REOL)
        ☐ Short Sale Information and Advisory (C.A.R. Form SSIA)   ☐ Trust Advisory (C.A.R. Form TA)
        ☐ Other: _____

    B.  **Addenda.** The addenda identified below are incorporated into this Agreement.
        ☒ *Compensation Schedule* _____   ☐ _____

4.  **COMPENSATION TO BROKER:**

    **Notice: the amount or rate of real estate commissions is not fixed by law. They are set by each Broker individually and may be negotiable between Seller and Broker.**

    A.  **ADVISORY:** Real estate commissions include all compensation and fees to Broker and are fully negotiable.

    B.  **COMPENSATION TO BROKER:** Seller agrees to pay to Broker as compensation for services under this Agreement, the amount specified in **paragraph 2C(1)**.

    C.  **OPTIONAL ADDITIONAL COMPENSATION FOR UNREPRESENTED BUYER:** Seller agrees to pay Broker the additional amount specified in **paragraph 2C(2)**, if checked, for services rendered only if the buyer is not represented by a real estate agent. If a buyer is represented by a real estate agent, whether working through Broker or another brokerage company, then **paragraph 2C(2)** does not apply.

    D.  **COMPENSATION TERMS:** Compensation is earned, and Seller shall pay Broker as follows:

        (1) **Completed Transaction or Seller Default:** If during the Listing Period, or any extension, Broker, any other broker, Seller or any other person procures a ready, willing, and able buyer(s) whose offer to purchase the Property on any price and terms is accepted by Seller, provided the buyer completes the transaction or is prevented from doing so by Seller. (Broker is entitled to compensation whether any escrow resulting from such offer closes during or after the expiration of the Listing Period, or any extension.)

        OR (2) **Continuation of Right to Compensation for Broker Procured Buyer(s):** If, during the Continuation Period specified in **paragraph 2C(3)**, or the same period of time after any cancellation of this Agreement, unless otherwise agreed, Seller enters into a contract to sell, convey, lease or otherwise transfer the Property to anyone ("Prospective Buyer") or that person's related entity:
        *   who physically entered and was shown the Property during the Listing Period or any extension by Broker or any other broker; or
        *   for whom Broker or any other broker submitted to Seller a signed, written offer to acquire, lease exchange or obtain an option on the Property.
        Broker's right to compensation pursuant to this paragraph shall only apply if, prior to expiration of this Agreement or any extension, Broker delivers to Seller a written notice of the names of such Prospective Buyers (C.A.R. Form NPB).

**RLA REVISED 7/24 (PAGE 2 OF 7)**                                    Seller's Initials  *MCA* / _____

**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 2 OF 7)**

Docusign Envelope ID: E9278777-D138-44E2-ABD5-5EE5560BC8BF
Property Address: *6435 Green Valley Cir. 2/18, Culver City, 90230* Page 25 of 58

OR **(3)** **Seller Interference with Listing:** If, without Broker's prior written consent, the Property is withdrawn from sale, conveyed, leased, rented, otherwise transferred, or made unmarketable by a voluntary act of Seller during the Listing Period, or any extension.

**E.** **ADDITIONAL COMPENSATION TERMS:**

**(1)** **Buyer Breach and Seller Recovery of Damages:** If completion of the sale is prevented by a party to the transaction other than Seller, then compensation which otherwise would have been earned under **paragraph 4** shall be payable only if and when Seller collects damages by suit, arbitration, settlement or otherwise, and then in an amount equal to the lesser of one-half of the damages recovered or the above compensation, after first deducting title and escrow expenses and the expenses of collection and suit, if any.

**(2)** **Escrow Instructions:** Seller hereby irrevocably assigns to Broker the above compensation from Seller's funds and proceeds in escrow. Broker may submit this Agreement, as instructions to compensate Broker pursuant to **paragraph 4**, to any escrow regarding the Property involving Seller and a buyer, Prospective Buyer or other transferee.

**F.** **SELLER COMPENSATION OBLIGATIONS TO OTHER BROKERS:**

**(1)** Seller represents that Seller has not previously entered into a listing agreement with another broker regarding the Property, unless specified in **paragraph 2C(4).**
**(2)** Seller warrants that Seller has no obligation to pay compensation to any other broker regarding the Property unless the Property is transferred to any of the individuals or entities specified in **paragraph 2C(4).**
**(3)** If the Property is sold to anyone specified in **paragraph 2C(4)** during the time Seller is obligated to compensate another broker: **(i)** Broker is not entitled to compensation under this Agreement; and **(ii)** Broker is not obligated to represent Seller in such transaction.

**G.** **MAXIMUM LISTING PERIOD: The maximum listing period allowed by law for residential property improved with one to four units is 24 months from the date this Agreement is made. This restriction does not apply if Seller is a corporation, LLC or partnership. It is unlawful to record or file this listing Agreement, or a memorandum or notice thereof, with the county recorder.**

**5.** **A.** **ITEMS EXCLUDED AND INCLUDED:** Unless otherwise specified in a real estate purchase agreement, all fixtures and fittings that are attached to the Property are included, and personal property items are excluded, from the purchase price.
Seller intends that the items specified in **paragraph 2D** be included or excluded in offering the Property for sale, but understands that: **(i)** the purchase agreement supersedes any intention expressed above and will ultimately determine which items are excluded and included in the transaction; and **(ii)** Broker is not responsible for and does not guarantee that the above exclusions and/or inclusions will be in the purchase agreement.

**B.** **LEASED OR NOT OWNED ITEMS; LIENED ITEMS:** The items specified in **paragraph 2D(3)** are leased or not owned by Seller and the items specified in **paragraph 2D(4)** have been financed and a lien has been placed on the Property to secure payment. Seller will provide to the buyer, as part of the purchase agreement, copies of lease documents, or other documents obligating Seller to pay for any such leased or liened item.

**C.** **SMART HOME FEATURES:** The smart home features are intended to be included or excluded as specified in **paragraph 2D(5).**

**6.** **SELLER REPRESENTATIONS:** Seller represents that, unless otherwise specified in writing, Seller is unaware of: **(i)** any Notice of Default recorded against the Property; **(ii)** any delinquent amounts due under any loan secured by, or other obligation affecting, the Property; **(iii)** any bankruptcy, insolvency or similar proceeding affecting the Property; **(iv)** any litigation, arbitration, administrative action, government investigation or other pending or threatened action that affects or may affect the Property or Seller's ability to transfer it; and **(v)** any current, pending or proposed special assessments affecting the Property. Seller shall promptly notify Broker in writing if Seller becomes aware of any of these items during the Listing Period or any extension thereof.

**7.** **BROKER'S AND SELLER'S DUTIES:**

**A.** **BROKER RESPONSIBILITY, AUTHORITY AND LIMITATIONS:** Broker agrees to exercise reasonable effort and due diligence to achieve the purposes of this Agreement. Unless Seller gives Broker written instructions to the contrary, Broker is authorized, but not required, to **(i)** order reports and disclosures including those specified in **paragraph 7E** as necessary, **(ii)** advertise and market the Property by any method and in any medium selected by Broker, including MLS and the internet, and, to the extent permitted by these media, control the dissemination of the information submitted to any medium; and **(iii)** disclose to any real estate licensee making an inquiry the receipt of any offers on the Property and the offering price of such offers.

**B.** **PRESENTATION OF OFFERS:**

**(1)** **Strategies Affecting Delayed Offers and Buyer Broker Compensation:** There are different strategies for obtaining the best offer for Seller. Seller is advised that certain buyers may prefer not to be in a competitive situation and either may not make an offer if there is an instruction that all offers will be presented at a later specified time or may try to make a "preemptive" offer that will expire shortly, hoping that Seller will accept before the presentation date. Additionally, certain buyers may not be able or allowed to pay compensation to a buyer's broker. These buyers may request for seller to pay buyer's broker through a term in the purchase agreement or through a separate compensation agreement. Seller is advised to discuss and consider the best strategy for Seller related to the presentation of offers.

Seller's Initials  MCa  /

    (2) **(A) Seller Instructs Broker to Present Offers:** Broker agrees to present all offers received for Seller's Property, and present them to Seller as soon as possible, unless Seller gives Broker written instructions to the contrary.
**OR (B) Seller Instructs Broker not to Present Offers until a Later Time:** If checked in **paragraph 2F(1)**, Seller has elected to have Broker hold all offers and present them to Seller as specified in **paragraph 2F(1)**. Broker will inform Seller that an offer has come in, but will not submit the offer to Seller, unless specifically instructed otherwise, in writing. Local MLS rules may impact this practice and whether it will provide any benefit to Seller. Broker and Seller may amend this instruction by agreeing in writing.

**C. BUYER SUPPLEMENTAL OFFER LETTERS (BUYER LETTERS):**

    (1) **Advisory Regarding Buyer Letters:** Seller is advised of the practice of many buyers and their agents to include a Buyer Letter with an offer to try to influence a seller to accept the buyer's offer. Buyer Letters may include photos and video. Whether overt or unintentional, Buyer Letters may contain information about a buyer's protected class or characteristics. Deciding whether to accept an offer based upon protected classes or characteristics is unlawful. Broker will not review the content of Buyer Letters. See C.A.R. Form FHDA for further information.

    (2) **(A) Seller Instructs Broker not to Present Buyer Letters** whether submitted with an offer or separately at a different time. Seller authorizes Broker to specify in the MLS that Buyer Letters will not be presented to Seller.
**OR (B) Seller Instructs Broker to Present Buyer Letters:** If checked in **paragraph 2F(2)**, Broker advises seller that: **(i)** Buyer Letters may contain information about protected classes or characteristics and such information should not be used in Seller's decision of whether to accept, reject, or counter a Buyer's offer; and **(ii)** if Seller relies on Buyer Letters, Seller is acting against Broker's advice and should seek the advice of counsel before doing so.

**D. SELLER GOOD FAITH:** Seller agrees to consider offers presented by Broker, and to act in good faith to accomplish the sale of the Property by, among other things, making the Property available for showing at reasonable times and, subject to **paragraph 2C(4)**, referring to Broker all inquiries of any party interested in the Property. Seller is responsible for determining at what price to list and sell the Property.

**E. INVESTIGATIONS AND REPORTS:** Seller agrees, within the time specified in **paragraph 2F(3)**, to order and, when required by the service provider, pay for all reports specified in **paragraph 2F(3)**. If Property is located in a Common Interest Development or Homeowners Association, Seller is advised that there may be benefits to obtaining any required documents prior to entering into escrow with any buyer. Such benefits may include, but not be limited to, potentially being able to lower costs in obtaining the documents and avoiding any potential delays or complications due to late or slow delivery of such documents.

**F. UNDISCLOSED CONDITIONS; INCOMPLETE OR INCORRECT INFORMATION:** Seller further agrees to indemnify, defend and hold Broker harmless from all claims, disputes, litigation, judgments, and costs arising from any incorrect or incomplete information supplied by Seller, or from any material facts that Seller knows but fails to disclose including dangerous or hidden conditions on the Property.

**8. DEPOSIT:** Broker is authorized to accept and hold on Seller's behalf any deposits to be applied toward the purchase price.

**9. AGENCY RELATIONSHIP:**

**A. DISCLOSURE:** Seller acknowledges receipt of a ☒ "Disclosure Regarding Real Estate Agency Relationship" (C.A.R. Form AD).

**B. SELLER REPRESENTATION:** Broker shall represent Seller in any resulting transaction, except as specified in **paragraph 4F(3)**.

**C. POSSIBLE DUAL AGENCY:**

    (1) **Disclosure and Consent in a Transaction:** Depending upon the circumstances, it may be necessary or appropriate for Broker to act as an agent for both Seller and buyer, exchange party, or one or more additional parties ("Buyer"). Broker shall, as soon as practicable, disclose to Seller any election to act as a dual agent representing both Seller and Buyer. If a Buyer is procured directly by Broker or an associate-licensee in Broker's firm, Seller hereby consents to Broker acting as a dual agent for Seller and Buyer. In the event of an exchange, Seller hereby consents to Broker collecting compensation from additional parties for services rendered, provided there is disclosure to all parties of such agency and compensation. Seller understands and agrees that: a dual agent may not, without the express permission of the respective party, disclose to the other party confidential information, including, but not limited to, facts relating to either Buyer's or Seller's financial position, motivations, bargaining position, or other personal information that may impact price, including the Seller's willingness to accept a price less than the listing price or Buyer's willingness to pay a price greater than the price offered; and except as set forth above, a dual agent is obligated to disclose known facts materially affecting the value or desirability of the Property to both parties. Compensation is not necessarily determinative of agency.

    (2) **Showing Properties:** Seller acknowledges that real estate brokers must have a written agreement in order to work with a buyer before showing properties to that buyer and that some buyers working through Broker may consider or make an offer on Seller's property. Seller consents to Broker entering into a representation agreement with a buyer, and if that buyer makes an offer on Seller's property, Broker will become a dual agent representing both that buyer and Seller.

    (3) **Potentially Competing Sellers and Buyers:** Seller understands that Broker may have or obtain listings on other properties, and that potential buyers may consider, make offers on, or purchase through Broker, property the same as or similar to Seller's Property. Seller consents to Broker's representation of sellers and buyers of other properties before, during and after the end of this Agreement. Seller acknowledges receipt of a ☒ "Possible Representation of More than One Buyer or Seller – Disclosure and Consent" (C.A.R. Form PRBS).

**D. UNREPRESENTED BUYERS:** If a buyer is interested in viewing Seller's Property is not already represented by a real estate broker, and such buyer refuses to be represented by Broker, Seller authorizes Broker to obtain a signed document from such buyer refusing representation by Broker. Broker shall provide such buyers, at the earliest practicable time, a disclosure of non-representation, such as Buyer Non-Agency (CAR Form BNA) or Open House Visitor Non Agency Disclosure and Sign-In (C.A.R. Form OHNA-SI).

**E. CONFIRMATION:** Broker shall confirm the agency relationship described above, or as modified, in writing, prior to or concurrent with Seller's execution of a purchase agreement.

**F. TERMINATION OF AGENCY RELATIONSHIP:** Seller acknowledges and agrees that the representation duties of, and agency relationship with, Broker terminate at the expiration of this Agreement or, if it occurs first, the completion of any transaction specified in this Agreement.

**10. SECURITY, INSURANCE, SHOWINGS, AUDIO AND VIDEO:** Broker is not responsible for loss of or damage to personal or real property, or injury to person, whether attributable to use of a keysafe/lockbox, a showing of the Property, or otherwise. Third parties, including, but not limited to, appraisers, inspectors, brokers and prospective buyers, may have access to, and take videos and photographs of, the interior of the Property. Seller agrees: **(i)** to take reasonable precautions to safeguard and protect valuables that might be accessible during showings of the Property; and **(ii)** to obtain insurance to protect against these risks. Broker does not maintain insurance to protect Seller. Persons visiting the Property may not be aware that they could be recorded by audio or visual devices installed by Seller (such as "nanny cams" and hidden security cameras). Seller is advised to post a notice disclosing the existence of security devices.

**11. PHOTOGRAPHS AND INTERNET ADVERTISING:**

**A.** In order to effectively market the Property for sale it is often necessary to provide photographs, virtual tours and other media to buyers. Unless checked in **paragraph 2E(2)**, Seller agrees that Broker or others may photograph or otherwise electronically capture images of the exterior and interior of the Property ("Images") for static and/or virtual tours of the Property by buyers and others for use on Broker's website, the MLS, and other marketing materials and sites. Seller acknowledges that if Broker engages third parties to capture and/or reproduce and display Images, the agreement between Broker and those third parties may provide such third parties with certain rights to those Images. The rights to the Images may impact Broker's control or lack of control of future use of the Images. If Seller is concerned, Seller should request that Broker provide any third parties' agreement impacting the Images. Seller also acknowledges that once Images are placed on the internet neither Broker nor Seller has control over who can view such Images and what use viewers may make of the Images, or how long such Images may remain available on the internet. Seller further assigns any rights in all Images to the Broker/Agent and agrees that such Images are the property of Broker/Agent and that Broker/Agent may use such Images for advertising, including post transaction and for Broker/Agent's business in the future.

**B.** Seller acknowledges that prospective buyers and/or other persons coming onto the Property may take photographs, videos or other images of the Property. Seller understands that Broker does not have the ability to control or block the taking and use of Images by any such persons. Once Images are taken and/or put into electronic display on the internet or otherwise, neither Broker nor Seller has control over who views such Images nor what use viewers may make of the Images.

**12. KEYSAFE/LOCKBOX:** A keysafe/lockbox is designed to hold a key to the Property to permit access to the Property by Broker, cooperating brokers, MLS participants, their authorized licensees and representatives, authorized inspectors, and accompanied prospective buyers. Seller further agrees that Broker, at Broker's discretion, and without further approval from Seller, shall have the right to grant access to and convey Seller's consent to access the Property to inspectors, appraisers, workers, repair persons, and other persons requiring entry to the Property in order to facilitate the sale of the Property. Broker, cooperating brokers, MLS and Associations/Boards of REALTORS® are not insurers against injury, theft, loss, vandalism or damage attributed to the use of a keysafe/lockbox.

**A.** Unless checked in **paragraph 2J**, Seller authorizes Broker to install a keysafe/lockbox.

**B. TENANT-OCCUPIED PROPERTY:** If Seller does not occupy the Property, Seller shall be responsible for obtaining occupant(s)' written permission for use of a keysafe/lockbox (C.A.R. Form KLA).

**13. SIGN:** Unless checked in **paragraph 2J**, Seller authorizes Broker to install a FOR SALE/SOLD sign on the Property.

**14. EQUAL HOUSING OPPORTUNITY:** The Property is offered in compliance with federal, state and local anti-discrimination laws.

**15. ATTORNEY FEES:** In any action, proceeding or arbitration between Seller and Broker arising out of this Agreement, Seller and Broker are each responsible for paying their own attorney's fees and costs except as provided in **paragraph 18A**.

**16. MANAGEMENT APPROVAL:** If an associate-licensee in Broker's office (salesperson or broker-associate) enters into this Agreement on Broker's behalf, Broker or Manager has the right to cancel this Agreement, in writing, within **5 days** After its execution.

**17. SUCCESSORS AND ASSIGNS:** This Agreement shall be binding upon Seller and Seller's successors and assigns.

RLA REVISED 7/24 (PAGE 5 OF 7)

Seller's Initials ⎡Initial⎤ MCl /  _____



**18. DISPUTE RESOLUTION:**

    **A. MEDIATION:** (1) Seller and Broker agree to mediate any dispute or claim arising between them under this Agreement, before resorting to arbitration or court action. (2) Mediation fees, if any, shall be divided equally among the parties involved. (3) If, for any dispute or claim to which this paragraph applies, any party (the non-mediating party) **(i)** commences an action without first attempting to resolve the matter through mediation, or **(ii)** before commencement of an action, refuses to mediate after a request has been made, then if the non-mediating party is the losing party in any such action, the prevailing party in such action shall be entitled to recover attorney fees from the non-mediating party, notwithstanding the terms in **paragraph 15.** (4) **Exclusions from this mediation agreement are specified in paragraph 18B.**

    **B. ADDITIONAL MEDIATION TERMS: The following matters shall be excluded from mediation: (i) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in Civil Code § 2985; (ii) an unlawful detainer action; (iii) the filing or enforcement of a mechanic's lien; and (iv) any matter that is within the jurisdiction of a probate, small claims or bankruptcy court. The filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies, shall not constitute a waiver or violation of the mediation provisions.**

    **C. ARBITRATION ADVISORY: If Seller and Broker desire to resolve disputes arising between them through arbitration rather than court, they can document their agreement by attaching and signing an Arbitration Agreement (C.A.R. Form ARB).**

**19. ENTIRE AGREEMENT:** All prior discussions, negotiations and agreements between the parties concerning the subject matter of this Agreement are superseded by this Agreement, which constitutes the entire contract and a complete and exclusive expression of their agreement, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. This Agreement and any supplement, addendum or modification, including any photocopy or facsimile, may be executed in counterparts.

**20. OWNERSHIP, TITLE AND AUTHORITY:** Seller warrants that: **(i)** Seller is the owner of the Property; **(ii)** no other persons or entities have title to the Property; and **(iii)** Seller has the authority to both execute this Agreement and sell the Property. Exceptions to ownership, title and authority are specified in **paragraph 2G.**

**21. LEGALLY AUTHORIZED SIGNER:** Wherever the signature or initials of the Legally Authorized Signer, identified in the signature block below, appear on this Agreement or any related documents, it shall be deemed to be in a representative capacity for the entity described and not in an individual capacity, unless otherwise indicated. The Legally Authorized Signer **(i)** represents that the entity for which that person is acting already exists and is in good standing to do business in California and **(ii)** shall deliver to Broker, within **3 days** after execution of this Agreement, evidence of authority to act in that capacity (such as but not limited to: applicable portion of the trust or Certification Of Trust (Probate Code § 18100.5), letters testamentary, court order, power of attorney, corporate resolution, or formation documents of the business entity).

## REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK

### PROCEED TO NEXT PAGE

**RLA REVISED 7/24 (PAGE 6 OF 7)**

Seller's Initials  / _____



**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 6 OF 7)**
Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX  75201   www.lwolf.com   **6435 Green Valley**

By signing below, Seller acknowledges that Seller has read, understands, received a copy of and agrees to the terms of this Residential Listing Agreement.

☐ ENTITY SELLERS: (Note: If this paragraph is completed, a Representative Capacity Signature Disclosure (C.A.R. Form RCSD) is not required for the Legally Authorized Signers designated below.)

(1) One or more Sellers is a trust, corporation, LLC, probate estate, partnership, other entity or holds a power of attorney.
(2) This Agreement is being Signed by a Legally Authorized Signer in a representative capacity and not in an individual capacity. See **paragraph 21** for additional terms.
(3) The name(s) of the Legally Authorized Signer(s) is: _____, _____.
(4) A.  If a trust, identify Seller as trustee(s) of the trust or by simplified trust name (ex. John Doe, co-trustee, Jane Doe, co-trustee or Doe Revocable Family Trust).
    B.  If Property is sold under the jurisdiction of a probate court, identify Seller as executor or administrator, or by a simplified probate name (John Doe, executor, or Estate (or Conservatorship) of John Doe).
(5) The following is the full name of the entity (if a trust, enter the complete trust name; if under probate, enter full name of the estate, including case #): _____
    _____.

**SELLER SIGNATURE(S):**

(Signature) By, _*Michael C. Alexander*_____ Date: 12/15/2024 _____

Printed name of SELLER: *Michael C. Alexander*

☐ Printed Name of Legally Authorized Signer: _____ Title, if applicable, _____

Address _____ City _____ State ____ Zip _____

Email _____ Phone # _____

(Signature) By, _____ Date: _____

Printed name of SELLER: _____

☐ Printed Name of Legally Authorized Signer: _____ Title, if applicable, _____

Address _____ City _____ State ____ Zip _____

Email _____ Phone # _____

☐ Additional Signature Addendum attached (C.A.R. Form ASA)

**BROKER SIGNATURE(S):**

Real Estate Broker (Firm) *Lawyers Realty Group* _____ DRE Lic # *01870511* _____

Address *7700 Irving Center Dr* _____ City *Irvine* _____ State *CA*  Zip *92618*

By (Broker/Agent) _*John Holmes*_____ *John Holmes* Date 12/14/2024

Tel. *(949)535-2945* _____ E-mail *agent@lawyersrealtygroup.com* ___ DRE Lic # *00957800*

By (Broker/Agent) _____ Date _____

Tel. _____ E-mail _____ DRE Lic # _____

☐ More than one agent from the same firm represents Seller. Additional Agent Acknowledgement (C.A.R. Form AAA) attached.

☐ Two Brokers with different companies are co-listing the Property. Co-listing Broker information is on the attached Additional Broker Acknowledgement (C.A.R. Form ABA).

© 2024, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®.

Published and Distributed by: REAL ESTATE BUSINESS SERVICES, LLC. *a subsidiary of the California Association of REALTORS®*

**RLA REVISED 7/24 (PAGE 7 OF 7)**



**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 7 OF 7)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com      6435 Green Valley

Docusign Envelope ID: E9278777-D138-44E2-ABD5-5BE6650BC9BE

**CALIFORNIA
ASSOCIATION
OF REALTORS®**

## MULTIPLE LISTING SERVICE ADDENDUM
### (C.A.R. Form MLSA, 7/24)

The following terms and conditions are hereby incorporated in and made a part of the Residential Listing Agreement, ☐ Other _____ ("Agreement"),

dated  __12/14/2024__ , on property known as  __6435 Green Valley Cir. 214, Culver City,  90230__

in which  __Michael C. Alexander__  is referred to as ("Seller")

and  __Lawyers Realty Group__  is referred to as ("Broker").

**1.  MULTIPLE LISTING SERVICE:**
  **A.  WHAT IS AN MLS?** The MLS is a database of properties for sale that is available and disseminated to and accessible by all other real estate agents who are participants or subscribers to the MLS. As set forth in **paragraph 3**, participants and subscribers conducting public marketing of a property listing must submit the property information to the MLS. Property information submitted to the MLS describes the price, terms and conditions under which the Seller's property is offered for sale, excepting offers of compensation. It is likely that a significant number of real estate practitioners in any given area are participants or subscribers to the MLS. The MLS may also be part of a reciprocal or data sharing agreement to which other multiple listing services belong. Real estate agents belonging to other multiple listing services that have reciprocal or data sharing agreements with the MLS also have access to the information submitted to the MLS. The MLS may further transmit listing information to internet sites that post property listings online.
  **B.  WHAT INFORMATION IS PROVIDED TO THE MLS BEFORE OR AFTER SALE:** All terms of the transaction, including sales price and, if applicable, financing and concessions, **(i)** will be provided to the MLS in which the Property is listed for publication, dissemination and use by persons and entities on terms approved by the MLS, and **(ii)** may be provided to the MLS even if the Property was not listed with the MLS. Seller consents to Broker providing a copy of this listing agreement to the MLS if required by the MLS.
  **C.  WHAT IS BROKER'S MLS?** Broker is a participant/subscriber to the Multiple Listing Service (MLS) specified in **paragraph 2E(1)** of the Listing Agreement and possibly others. Broker shall inform Seller if the MLS specified in **paragraph 3** is not the primary MLS for the geographic area of the Property. When required by **paragraph 3** or by the MLS, Property will be listed with the MLS(s) specified.

**2.  BENEFITS OF USING THE MLS; IMPACT OF OPTING OUT OF THE MLS**
  **A.  EXPOSURE TO BUYERS THROUGH MLS: Listing property with an MLS** exposes a seller's property to all real estate agents and brokers (and their potential buyer clients) who are participants or subscribers to the MLS or a reciprocating MLS. The MLS may further transmit the MLS database to internet sites that post property listings online.
  **B.  IMPACT OF OPTING OUT OF MLS:** If Seller elects to exclude the Property from the MLS, Seller understands and acknowledges that: **(i)** Seller is authorizing limited exposure of the Property and NO marketing or advertising of the Property to the public will occur; **(ii)** real estate agents and brokers from other real estate offices, and their buyer clients, who have access to that MLS may not be aware that Seller's Property is offered for sale; **(iii)** Information about Seller's Property will not be transmitted from the MLS to various real estate internet sites that are used by the public to search for property listings and; **(iv)** real estate agents, brokers and members of the public may be unaware of the terms and conditions under which Seller is marketing the Property.
  **C.  REDUCTION IN EXPOSURE:** Any reduction in exposure of the Property may lower the number of offers and negatively impact the sales price.
  **D.  NOT LISTING PROPERTY IN A LOCAL MLS:** If the Property is listed in an MLS which does not cover the geographic area where the Property is located then real estate agents and brokers working that territory, and buyers they represent looking for property in the neighborhood, may not be aware the Property is for sale.

**3.  PUBLIC MARKETING OF PROPERTY:**
  **A.  CLEAR COOPERATION POLICY:** Unless **paragraph 3F** is checked, MLS rules require that residential real property with one to four units and vacant lot listings be submitted to the MLS within **1 business day** of any public marketing.
  **B.  PUBLIC MARKETING WITHIN CLEAR COOPERATION: (i)** Public marketing includes, but is not limited to, flyers displayed in windows, yard signs, digital marketing on public facing websites, brokerage website displays, digital communications marketing and email blasts, multi-brokerage listing sharing networks, marketing to closed or private listing clubs or groups, and applications available to the general public. **(ii)** Public marketing does not include an office exclusive listing where there is direct promotion of the listing between the brokers and licensees affiliated with the listing brokerage, and one-to-one promotion between these licensees and their clients.
  **C.  "COMING SOON" STATUS IMPACT ON MARKETING; Days on Market (DOM):**
    (1)  Seller is advised to discuss with Broker the meaning of "Coming Soon" as that term applies to the MLS in which the Property will be listed, and how any Coming Soon status will impact when and how a listing will be viewable to the public via the MLS. Seller is further advised to discuss with Broker how any DOM calculations or similarly utilized tracking field works in the MLS in which the Property will be listed.
    (2)  Seller does ☐ does not) authorize Broker to market the Property per the Coming Soon status in Broker's MLS, if any.
  **D.  SELLER INSTRUCTS BROKER:**
    (1)  Seller instructs Broker to market the Property to the public at the beginning of the Listing Period;
  OR (2)  ☐ Seller instructs Broker to begin marketing the Property to the public on _____ (date);

**MLSA 7/24 (PAGE 1 OF 2)**

Lawyers Realty Group, 7700 Irvine Center Dr. Irvine CA 92618                    Phone: 9495352945              Fax: 9494856685           6435 Green Valley
John Holmes                          Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201  www.lwolf.com

OR (3) ☐ Seller instructs Broker NOT to market the Property to the public. (MLS may require C.A.R. Form SELM or local equivalent form.) Seller understands that no public marketing will occur and the scope of marketing that will occur will consist only of direct one-on-one promotion between the brokers and licensees affiliated with the listing brokerage and their respective clients.

**E.** Seller understands and agrees that should any public marketing of the property occur, the Property listing will be submitted to the MLS within **1 business day**.

**F.** ☐ **CLEAR COOPERATION POLICY DOES NOT APPLY:** The MLSs utilized by Broker do not have a Clear Cooperation Policy that applies to the Property. **Paragraphs 3A-E** do not apply to this listing. Broker shall disclose to Seller and obtain Seller's consent for any instruction to not market the Property on the MLS or to the public.

**4. MLS DATA ON THE INTERNET:** MLS rules allow MLS data to be made available by the MLS to additional internet sites unless Broker gives the MLS instructions to the contrary. Specific information that can be excluded from the internet as permitted by (or in accordance with) the MLS is as follows:

**A. PROPERTY OR PROPERTY ADDRESS:** Seller can instruct Broker to have the MLS not display the Property or the Property address on the internet (C.A.R. Form SELI). Seller understands that either of these opt outs would mean consumers searching for listings on the internet may not see the Property or Property's address in response to their search.

**B. FEATURE OPT OUTS:** Seller can instruct Broker to advise the MLS that Seller does not want visitors to MLS Participant or Subscriber Websites or Electronic Displays that display the Property listing to have the features below (C.A.R. Form SELI). Seller understands **(i)** that these opt outs apply only to Websites or Electronic Displays of MLS Participants and Subscribers who are real estate broker and agent members of the MLS; **(ii)** that other internet sites may or may not have the features set forth herein; and **(iii)** that neither Broker nor the MLS may have the ability to control or block such features on other internet sites.

(1) **COMMENTS AND REVIEWS:** The ability to write comments or reviews about the Property on those sites; or the ability to link to another site containing such comments or reviews if the link is in immediate conjunction with the Property display.

(2) **AUTOMATED ESTIMATE OF VALUE:** The ability to create an automated estimate of value or to link to another site containing such an estimate of value if the link is in immediate conjunction with the Property display.

**C. SELLER ELECTION:**

(1) Seller authorizes the MLS to make all listing information available to internet sites;

OR (2) ☐ Seller elects to opt out of certain internet features as provided by C.A.R. Form SELI or the local equivalent form.

**5. SELLER CONCESSIONS:**

**A. CONCESSION EXPLANATIONS:**
- Concessions are monetary payments that a seller agrees to contribute towards a buyer's expenses and other costs a buyer is responsible for in the transaction.
- Concessions may include, but are not limited to, costs of escrow or title, lender fees, repairs, inspections and buyer broker compensation.
- Concessions identified in an MLS listing are not promises to pay but instead indicate to a buyer that the seller will consider offers asking for concessions. Concessions specified in the MLS are not intended to be binding on Seller unless included in the accepted purchase agreement.
- Concessions specified in the MLS must be allowed to be used for any permissible buyer expense or cost and must not specify the concessions are to be used for broker compensation. However, a term in the buyer's offer may specify that the Seller agrees to pay all or a portion of the compensation that the buyer owes its broker.

**B. SELLER AUTHORIZATION:**

(1) Seller does not authorize Broker to put in the MLS that Seller is willing to consider offers asking for concessions.

OR (2) ☐ Seller authorizes Broker to put in the MLS that Seller is willing to consider offers asking for concessions, if allowed under the MLS rules. Even if permitted by the MLS, no amount of the possible concession can be stated in MLS, either as a percent of the purchase price or a flat fee, unless Seller notifies Broker in writing of the amount.

**6. PHOTOGRAPHS:**

**A.** Visitors entering or touring the Property may take photographs, and Broker does not have the ability to control or block the taking and use of Images. Seller can instruct Broker to publish in the MLS is limited to those persons preparing appraisal or inspection reports. Seller acknowledges that unauthorized persons may take images who do not have access to or have not read any limiting instruction in the MLS or who take images regardless of any limiting instruction in the MLS.

**B. SELLER INSTRUCTION:**

(1) Visitors are not restricted from taking pictures of the Property;

OR (2) ☐ Seller instructs Broker to publish in the MLS that taking of Images is limited to those persons preparing appraisal or inspection reports.

**The foregoing terms and conditions are hereby agreed to, and the undersigned acknowledge receipt of a copy of this Multiple Listing Service Addendum.**

Seller _Michael C. Alexander_____ Date 12/15/2024_____

    Michael C. Alexander

Seller _____ Date _____

Real Estate Broker (Listing Firm) _Lawyers Realty Group_____

By _John Holmes_____ Date 12/14/2024_____

    John Holmes

© 2024, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®.

Published and Distributed by: REAL ESTATE BUSINESS SERVICES, LLC. *a subsidiary of the California Association of REALTORS®*



**MLSA 7/24 (PAGE 2 OF 2)**

**MULTIPLE LISTING SERVICE ADDENDUM (MLSA PAGE 2 OF 2)**

Docusign Envelope ID: E9278777-D138-44E2-ABD5-5B6C6509SCBBE



**CALIFORNIA
ASSOCIATION
OF REALTORS®**

# SELLER'S ADVISORY
**(C.A.R. Form SA, Revised 6/23)**

1. **INTRODUCTION:** Selling property in California is a process that involves many steps. From start to finish, it could take anywhere from a few weeks to many months, depending upon the condition of your Property, local market conditions and other factors. You have already taken an important first step by listing your Property for sale with a licensed real estate broker. Your broker will help guide you through the process and may refer you to other professionals, as needed. This advisory addresses many things you may need to think about and do as you market your Property. Some of these things are requirements imposed upon you, either by law or by the listing or sale contract. Others are simply practical matters that may arise during the process. Please read this document carefully and, if you have any questions, ask your broker or appropriate legal or tax advisor for help.

2. **DISCLOSURES:**
   **A.  General Disclosure Duties:** You must affirmatively disclose to the buyer, in writing, all known facts that materially affect the value or desirability of your Property. You must disclose these facts whether or not asked about such matters by the buyer, any broker, or anyone else. This duty to disclose applies even if the buyer agrees to purchase your Property in its present condition without requiring you to make any repairs. If you do not know what or how to disclose, you should consult a real estate attorney in California of your choosing. Broker cannot advise you on the legal sufficiency of any disclosures you make. If the Property you are selling is a residence with one to four units except for certain subdivisions, your broker also has a duty to conduct a reasonably competent and diligent visual inspection of the accessible areas and to disclose to a buyer all adverse material facts that the inspection reveals. If your broker discovers something that could indicate a problem, your broker must advise the buyer.
   **B.  Statutory Duties** (For one-to-four Residential Units):
   **(1)** You must timely prepare and deliver to the buyer, among other things, a Real Estate Transfer Disclosure Statement ("TDS"), and a Natural Hazard Disclosure Statement ("NHD"). You have a legal obligation to fill out the TDS form, in its entirety, honestly and completely. (Many local entities or organizations have their own supplement to the TDS that you may also be asked to complete.) The NHD is a statement indicating whether your Property is in certain designated flood, fire or earthquake/seismic hazard zones. Third-party professional companies can help you with this task. If your property is in a high or very high fire zone, and you have to complete the TDS, you will also be responsible for disclosing compliance with defensible space laws and, depending on the Property's age, may also have to disclose if the building itself has been hardened to protect it from catching fire.
   **(2)** Depending upon the age and type of construction of your Property, you may also be required to provide and, in certain cases you can receive limited legal protection by providing, the buyer with booklets entitled "The Homeowner's Guide to Earthquake Safety," "The Commercial Property Owner's Guide to Earthquake Safety," "Protect Your Family From Lead in Your Home" and "Environmental Hazards: A Guide For Homeowners and Buyers." Some of these booklets may be packaged together for your convenience. The earthquake guides ask you to answer specific questions about your Property's structure and preparedness for an earthquake. If you are required to supply the booklet about lead, you will also be required to disclose to the buyer any known lead-based paint and lead-based paint hazards on a separate form. The environmental hazards guide informs the buyer of common environmental hazards that may be found in properties.
   **(3)** If you know that your property is: (i) located within one mile of a former military ordnance location; or (ii) in or affected by a zone or district allowing manufacturing, commercial or airport use, you must disclose this to the buyer. You are also required to make a good faith effort to obtain and deliver to the buyer a disclosure notice from the appropriate local agency(ies) about any special tax levied on your Property pursuant to the Mello-Roos Community Facilities Act, the Improvement Bond Act of 1915, and a notice concerning the contractual assessment provided by § 5898.24 of the Streets And Highways Code (collectively, "Special Tax Disclosures").
   **(4)** If the TDS, NHD, or lead, fire hardening, defensible space, military ordnance, commercial zone or Special Tax Disclosures are provided to the buyer after you accept that buyer's offer, the buyer will have 3 days after delivery (or 5 days if mailed) to terminate the offer, which is why it is extremely important to complete these disclosures as soon as possible. There are certain exemptions from these statutory requirements; however, if you have actual knowledge of any of these items, you may still be required to make a disclosure as the items can be considered material facts.
   **C.  Death and Other Disclosures:** Many buyers consider death on real property to be a material fact in the purchase of property. In some situations, it is advisable to disclose that a death occurred or the manner of death; however, California Civil Code § 1710.2 provides that <u>you have no disclosure duty</u> "where the death has occurred more than three years prior to the date the transferee offers to purchase, lease, or rent the real property, or [regardless of the date of occurrence] that an occupant of that property was afflicted with, or died from, Human T-Lymphotropic Virus Type III/Lymphadenopathy-Associated Virus." This law does not "immunize an owner or his or her agent from making an intentional misrepresentation in response to a direct inquiry from a transferee or a prospective transferee of real property, concerning deaths on the real property."
   **D.  Condominiums and Other Common Interest Subdivisions:** If the Property is a condominium, townhouse, or other property in a common interest subdivision, you must provide to the buyer copies of the governing documents, the most recent financial statements distributed, and other documents required by law or contract. If you do not have a current version of these documents, you can request them from the management of your homeowner's association. To avoid delays, you are encouraged to obtain these documents as soon as possible, even if you have not yet entered into a purchase agreement to sell your Property.

3. **CONTRACT TERMS AND LEGAL REQUIREMENTS:**
   **A.  Contract Terms and Conditions:** A buyer may request, as part of the contract for the sale of your Property, that you pay for repairs to the Property and other items. Your decision on whether or not to comply with a buyer's requests may affect your ability to sell your Property at a specified price.
   **B.  Withholding Taxes:** Under federal and California tax laws, a buyer is required to withhold a portion of the purchase price from your sale proceeds for tax purposes unless you sign an affidavit of non-foreign status and California residency, or some other exemption applies and is documented.

Seller's Initials  Initials [ MCa ]  _____

© 2023, California Association of REALTORS®, Inc.
**SA REVISED 6/23 (PAGE 1 OF 2)**

---

**SELLER'S ADVISORY (SA PAGE 1 OF 2)**

Property Address: 6435 Green Valley Cir. 214, Culver City, 90230          Date: *12/14/2024*

   **C.  Prohibition Against Discrimination:** Discriminatory conduct in the sale of real property against individuals belonging to legally protected classes is a violation of the law.

   **D.  Government Required Repairs, Replacements and Alterations:** Under State law, Property owners with limited exceptions, are required to: (1) Install operable smoke alarms and brace water heaters and provide a Buyer with a statement of compliance. Existing operable smoke alarms, that met compliance standards when installed, do not have to be removed even if not up to current legal requirements. Smoke alarms that are added or that replace older versions must comply with current law; and (2) install carbon monoxide detection devices. Some city and county governments may impose additional requirements, including, but not limited to, installing low-flow toilets and showerheads, gas shut-off valves, tempered glass, and barriers around swimming pools and spas. You should consult with the appropriate governmental agencies, inspectors, and other professionals to determine which requirements apply to your Property, the extent to which your Property complies with such requirements, and the costs, if any, of compliance.

   **E.  EPA's LEAD-BASED PAINT RENOVATION, REPAIR AND PAINTING RULE PROGRAM (RRP):** The RRP requires that contractors and maintenance professionals working in pre-1978 housing, child care facilities, and schools with lead-based paint be certified; that their employees be trained; and that they follow protective work practice standards. The RRP applies to renovation, repair, or painting activities affecting more than six square feet of lead-based paint in a room or more than 20 square feet of lead-based paint on the exterior. Enforcement of the rule begins October 1, 2010. See the EPA website at www.epa.gov/lead for more information.

   **F.  Legal, Tax and Other Implications:** Selling your Property may have legal, tax, insurance, title or other implications. You should consult an appropriate professional for advice on these matters.

4. **MARKETING CONSIDERATIONS:**

   **A.  Pre-Sale Inspections and Considerations:** You should consider doing what you can to prepare your Property for sale, such as correcting any defects or other problems, making cosmetic improvements, and staging. Many people are not aware of defects in or problems with their own Property. One way to make yourself aware is to obtain professional inspections prior to sale. Pre-sale inspections may include a general property inspection; an inspection for wood destroying pest and organisms (Structural Pest Control Report) and an inspection of the septic or well systems, if any, among others. By doing this, you then have an opportunity to make repairs before your Property is sold, which may enhance its marketability. Keep in mind, however, that any problems revealed by such inspection reports or repairs that have been made, should be disclosed to the buyer (see "Disclosures" in **paragraph 2** above). This is true even if the buyer gets their own inspections covering the same area. Obtaining inspection reports may also assist you during contract negotiations with the buyer. For example, if a Structural Pest Control Report has both a primary and secondary recommendation for clearance, you may want to specify in the purchase agreement those recommendations, if any, for which you are going to pay.

   **B.  Post-Sale Protections:** It is often helpful to provide the buyer with, among other things, a home protection/warranty plan for the Property. These plans will generally cover problems, not deemed to be pre-existing, that occur after your sale is completed. In the event something does go wrong after the sale, and it is covered by the plan, the buyer may be able to resolve the concern by contacting the home protection company.

   **C.  Safety Precautions:** Advertising and marketing your Property for sale, including, but not limited to, holding open houses, placing a keysafe/lockbox, erecting FOR SALE signs, and disseminating photographs, video tapes, and virtual tours of the premises, may jeopardize your personal safety and that of your Property. You are strongly encouraged to maintain insurance, and to take any and all possible precautions and safeguards to protect yourself, other occupants, visitors, your Property, and your belongings, including cash, jewelry, drugs, firearms and other valuables located on the Property, against injury, theft, loss, vandalism, damage, and other harm.

   **D.  Expenses:** You are advised that you, not the Broker, are responsible for the fees and costs, if any, to comply with your duties and obligations to the buyer of your Property.

5. **OTHER ITEMS:** _____

_____

Seller has read and understands this Advisory. By signing below, Seller acknowledges receipt of a copy of this document.

Seller ___*Michael C. Alexander*_____ Date 12/15/2024
Print Name *Michael C. Alexander*

Seller _____ Date _____
Print Name _____

© 2023, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020



**SA REVISED 6/23 (PAGE 2 OF 2)**

Docusign Envelope ID: E9278777-D138-44E2-ABD5-5BAC5FC02C57



**BROKER COMPENSATION ADVISORY**
(C.A.R. Form BCA, 7/24)

1. **WHEN SELLERS LIST THEIR PROPERTY FOR SALE THROUGH A REAL ESTATE BROKER THEY AGREE TO PAY THE SELLER'S BROKER WHEN ESCROW CLOSES.**

   A. **LISTING AGREEMENT COMPENSATION IS FULLY NEGOTIABLE:** When a seller enters into a listing agreement with a broker, the seller authorizes the broker to find a buyer for the seller's property and agrees to pay the seller's broker if a buyer is found who purchases the property. Compensation amounts are not fixed by law and are fully negotiable between the seller and the seller's broker. When negotiating compensation, the parties may discuss factors such as the broker's expertise and experience, the type of broker services to be performed, and the broker's time and expenses, among other considerations.

   B. **OPTIONAL ADDITIONAL COMPENSATION IF BUYER IS UNREPRESENTED:** A listing agreement may include optional additional compensation amounts owed to the seller's broker for situations where the broker takes on additional responsibilities or workload. Sometimes a buyer may not be working with nor want to be represented by a real estate broker. When that happens, the seller's broker is not required to represent the buyer, and the seller and seller's broker may decide that they do not want to create such a relationship. In those situations, the seller's broker is advised to use a Buyer Non-Agency (C.A.R. Form BNA) to inform the buyer that the seller's broker will be acting on behalf of the seller only, and not act as the buyer's agent, throughout the transaction. However, because the buyer is unrepresented, the seller's agent will inevitably have to do more work to facilitate the transaction. A seller may agree to compensate their broker for the additional work in such cases.

   C. **BROKER MAY REPRESENT BOTH BUYER AND SELLER; DUAL AGENCY:** California law allows a brokerage company to represent both seller and buyer in a real estate transaction. At the time the agent, on behalf of a brokerage, obtains the signature of a seller on a listing agreement, the agent will not, in most cases, know who the eventual buyer will be for a seller's property. Similarly, at the time an agent, on behalf of a brokerage, obtains the signature of a buyer on a buyer representation agreement, the agent will not, in most cases, know who the eventual seller will be for a property the buyer wants to buy. Because many individual licensees may work through one brokerage company, and some individual licensees work with many buyers and sellers, there is a possibility that the same brokerage company will represent both buyer and seller in a transaction. If licensees working through broker represent both seller and buyer, broker is allowed to receive compensation from each, provided the seller and buyer are advised of the relationship and the total amount of compensation the broker will receive.

2. **BROKER AGREEMENTS WITH BUYERS:**

   A. **BUYER REPRESENTATION COMPENSATION IS FULLY NEGOTIABLE:** When a buyer enters into a representation agreement with a broker, the buyer authorizes the broker to locate properties for the buyer to buy and agrees to pay the buyer's broker if a transaction is completed. Compensation amounts are not fixed by law and are fully negotiable. When negotiating compensation, the parties may discuss factors such as the broker's expertise and experience, the type of broker services to be performed, and the broker's time and expenses, among other considerations.

   B. **REQUIREMENT FOR WRITTEN AGREEMENTS:** Pursuant to a nationwide class action settlement reached by the National Association of REALTORS® (NAR), participants in Multiple Listing Services are required to have a written agreement with a buyer prior to showing a buyer a residential property or giving a buyer a tour of such a property. The agreement must identify the amount of compensation to be paid to the broker for services provided and require that the broker cannot receive any compensation in excess of the amount specified in the agreement. Pursuant to legislation expected to become law in California on January 1, 2025, all licensees showing a buyer any type of property will be required to have a written agreement with that buyer prior to the showing.

BCA 7/24 (PAGE 1 OF 2)

Lawyers Realty Group, 7700 Irvine Center Dr. Irvine CA 92618      Phone: 9495352945      Fax: 9494856685      6435 Green Valley
John Holmes                          Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com

Docusign Envelope ID: E9278777-D138-44E2-ABD5-5EFC5505C98F

**C. ADVANTAGES OF WRITTEN AGREEMENTS:** Buyers and their brokers benefit when the terms of their relationship and respective duties are in writing. A written agreement establishes clear, mutual expectations and helps avoid misunderstandings over the buyer and broker's duties and the amount of compensation the buyer's agent is to be paid.

3. **WHEN ENLISTING A REAL ESTATE BROKER TO REPRESENT THEM, BUYERS AGREE TO PAY THE BUYER'S BROKER WHEN ESCROW CLOSES, BUT THE PERSON RESPONSIBLE FOR PAYMENT MAY BE NEGOTIATED IN THE TRANSACTION:**

   **A. BUYER PAYS THE COMPENSATION PURSUANT TO A BUYER REPRESENTATION AGREEMENT:** A buyer's broker may negotiate the amount of compensation directly with the Buyer and then document that agreement in a buyer representation agreement (C.A.R. Form BRBC or PSRA). The buyer then becomes contractually obligated to pay the broker by providing funds to escrow prior to the closing of a transaction.

   **B. SELLER PAYS THE COMPENSATION:**

   (1) **Buyer negotiates for Seller to Compensate Buyer's Broker:** A buyer may make a conditional offer to the seller by including a term in the purchase offer asking the seller to pay the buyer's broker if the buyer has already agreed to pay their own broker pursuant to a buyer representation agreement. If such a term is included in the purchase offer, the request will become one term among many that a seller may accept, reject, or negotiate by way of a counter offer. The possibility of asking the seller to pay the buyer's contractual compensation obligation option should be discussed when creating a buyer representation agreement and prior to an offer being made.

   (2) **Buyer's Agent negotiates an agreement directly with Seller:** If a seller is unrepresented or does not have an exclusive agency relationship with another broker, a buyer's broker may approach that seller asking the seller to sign an agreement (C.A.R. Form SP, Single Party Compensation Agreement) to pay the buyer's broker. In this situation, the seller agrees to pay the buyer's broker compensation without necessarily creating an agency relationship with the broker. When that happens, the buyer's broker is advised to use a Seller Non-Agency (C.A.R. Form SNA) to inform the seller that the buyer's broker will be acting on behalf of the buyer only, and not act as the seller's agent, throughout the transaction. However, because the seller is unrepresented, the buyer's agent will inevitably have to do more work to facilitate the transaction, which may be factored into the negotiation of the single party compensation agreement.

   **C. CHANGING PRACTICE RELATED TO A SELLER'S BROKER'S OFFER OF COMPENSATION:**

   Historically, in California, many seller's brokers used a Multiple Listing Service (MLS) to make a unilateral offer to compensate a buyer's broker who procured a buyer for the seller's property. However, the nationwide NAR settlement prohibits the seller's broker from using an MLS to make such an offer of compensation. The California Association REALTORS® (C.A.R.) listing agreement forms no longer provide for such offers of cooperating broker compensation nor does C.A.R. include other forms in its library of forms that might facilitate such offers. Buyers and sellers must separately negotiate compensation with their respective brokers, as specified above.

**By signing below, Seller or Buyer acknowledges that they have read, understand, and have received a Copy of this Broker Compensation Advisory. Seller or Buyer acknowledges they have been advised of their various options regarding compensation to be paid to real estate brokers and that any written agreement they have signed with a seller's or buyer's broker reflects a mutual understanding.**

Seller/Buyer  *Michael C. Alexander* Date 12/15/2024

Seller/Buyer _____ Date _____

© 2024, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®.

Published and Distributed by: REAL ESTATE BUSINESS SERVICES, LLC. *a subsidiary of the California Association of REALTORS®*



**BCA 7/24 (PAGE 2 OF 2)**

Docusign Envelope ID: E9278777-D138-44E2-ABD5-5B6C6506CBBF



CALIFORNIA
ASSOCIATION
OF REALTORS®

## POSSIBLE REPRESENTATION OF MORE THAN ONE BUYER
## OR SELLER - DISCLOSURE AND CONSENT
### (C.A.R. Form PRBS, Revised 12/21)

A real estate broker (Broker), whether a corporation, partnership or sole proprietorship, may represent more than one buyer or seller. This multiple representation can occur through an individual licensed as a broker or salesperson or through different individual broker's or salespersons (associate licensees) acting under the Broker's license. The associate licensees may be working out of the same or different office locations.

**Multiple Buyers:** Broker (individually or through its associate licensees) may be working with many prospective buyers at the same time. These prospective buyers may have an interest in, and make offers on, the same properties. Some of these properties may be listed with Broker and some may not. Broker will not limit or restrict any particular buyer from making an offer on any particular property whether or not Broker represents other buyers interested in the same property.

**Multiple Sellers:** Broker (individually or through its associate licensees) may have listings on many properties at the same time. As a result, Broker will attempt to find buyers for each of those listed properties. Some listed properties may appeal to the same prospective buyers. Some properties may attract more prospective buyers than others. Some of these prospective buyers may be represented by Broker and some may not. Broker will market all listed properties to all prospective buyers whether or not Broker has another or other listed properties that may appeal to the same prospective buyers.

**Dual Agency:** If Seller is represented by Broker, Seller acknowledges that broker may represent prospective buyers of Seller's property and consents to Broker acting as a dual agent for both seller and buyer in that transaction. If Buyer is represented by Broker, buyer acknowledges that Broker may represent sellers of property that Buyer is interested in acquiring and consents to Broker acting as a dual agent for both buyer and seller with regard to that property.

In the event of dual agency, seller and buyer agree that: a dual agent may not, without the express permission of the respective party, disclose to the other party confidential information, including, but not limited to, facts relating to either the buyer's or seller's financial position, motivations, bargaining position, or other personal information that may impact price, including the seller's willingness to accept a price less than the listing price or the buyer's willingness to pay a price greater than the price offered; and except as set forth above, a dual agent is obligated to disclose known facts materially affecting the value or desirability of the Property to both parties.

**Offers not necessarily confidential:** Buyer is advised that seller or listing agent may disclose the existence, terms, or conditions of buyer's offer unless all parties and their agent have signed a written confidentiality agreement. Whether any such information is actually disclosed depends on many factors, such as current market conditions, the prevailing practice in the real estate community, the listing agent's marketing strategy and the instructions of the seller.

Buyer and seller understand that Broker may represent more than one buyer or more than one seller and even both buyer and seller on the same transaction and consents to such relationships.

**Seller and/or Buyer acknowledges reading and understanding this Possible Representation of More Than One Buyer or Seller - Disclosure and Consent and agrees to the agency possibilities disclosed.**

| | | | |
|---|---|---|---|
| Seller | *Michael C. Alexander*<br><small>AADF4862EAF3406...</small> | *Michael C. Alexander* | Date 12/15/2024 |
| Seller | | | Date _____ |
| Buyer | | | Date _____ |
| Buyer | | | Date _____ |

| | | |
|---|---|---|
| Buyer's Brokerage Firm _____ | DRE Lic # _____ | |
| By _____ | DRE Lic # _____ | Date _____ |
| Seller's Brokerage Firm _Lawyers Realty Group_ | DRE Lic # _01870511_ | |
| By *John Holmes* | DRE Lic # _00957800_ | Date 12/14/2024 |
| John Holmes | | |

© 2021, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

**PRBS REVISED 12/21 (PAGE 1 OF 1)**

**POSSIBLE REPRESENTATION OF MORE THAN ONE BUYER OR SELLER (PRBS PAGE 1 OF 1)**

Docusign Envelope ID: E9278777-D138-44E2-ABD5-5DEC560C68E

# FAIR HOUSING AND DISCRIMINATION ADVISORY
**(C.A.R. Form FHDA, Revised 6/23)**

1. **EQUAL ACCESS TO HOUSING FOR ALL:** All housing in California is available to all persons. Discrimination as noted below is prohibited by law. Resources are available for those who have experienced unequal treatment under the law.
2. **FEDERAL AND STATE LAWS PROHIBIT DISCRIMINATION AGAINST IDENTIFIED PROTECTED CLASSES:**
   A. FEDERAL FAIR HOUSING ACT ("FHA") Title VIII of the Civil Rights Act; 42 U.S.C. §§ 3601-3619; Prohibits discrimination in sales, rental or financing of residential housing against persons in protected classes;
   B. CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT ("FEHA") California Government Code ("GC") §§ 12900-12996,12955; 2 California Code of Regulations ("CCR") §§ 12005-12271; Prohibits discrimination in sales, rental or financing of housing opportunity against persons in protected classes by providers of housing accommodation and financial assistance services as related to housing;
   C. CALIFORNIA UNRUH CIVIL RIGHTS ACT ("Unruh") California Civil Code ("CC") § 51; Prohibits business establishments from discriminating against, and requires full and equal accommodation, advantages, facilities, privileges, and services to persons in protected classes;
   D. AMERICANS WITH DISABILITIES ACT ("ADA") 42 U.S.C. §§ 12181-12189; Title III of the ADA prohibits discrimination based on disability in public accommodations; and
   E. OTHER FAIR HOUSING LAWS: § 504 of Rehabilitation Act of 1973 29 U.S.C. § 794; Ralph Civil Rights Act CC § 51.7; California Disabled Persons Act; CC §§ 54-55.32; any local city or county fair housing ordinances, as applicable.
3. **POTENTIAL LEGAL REMEDIES FOR UNLAWFUL DISCRIMINATION:** Violations of fair housing laws may result in monetary civil fines, injunctive relief, compensatory and/or punitive damages, and attorney fees and costs.
4. **PROTECTED CLASSES/CHARACTERISTICS:** Whether specified in Federal or State law or both, discrimination against persons based on that person's belonging to, association with, or perceived membership in, certain classes or categories, such as the following, is prohibited. Other classes, categories or restrictions may also apply.

| Race | Color | Ancestry | National Origin | Religion |
|---|---|---|---|---|
| Age | Sex, Sexual Orientation | Gender, Gender Identity, Gender expression | Marital Status | Familial Status (family with a child or children under 18) |
| Citizenship | Immigration Status | Primary Language | Military/Veteran Status | Source of Income (e.g., Section 8 Voucher) |
| Medical Condition | Disability (Mental & Physical) | Genetic Information | Criminal History (non-relevant convictions) | Any arbitrary characteristic |

5. **THE CALIFORNIA DEPARTMENT OF REAL ESTATE REQUIRES TRAINING AND SUPERVISION TO PREVENT HOUSING DISCRIMINATION BY REAL ESTATE LICENSEES:**
   A. California Business & Professions Code ("B&PC") § 10170.5(a)(4) requires 3 hours of training on fair housing for DRE license renewal; Real Estate Regulation § 2725(f) requires brokers who oversee salespersons to be familiar with the requirements of federal and state laws relating to the prohibition of discrimination.
   B. Violation of DRE regulations or real estate laws against housing discrimination by a real estate licensee may result in the loss or suspension of the licensee's real estate license. B&PC §10177(l)(1); 10 CCR § 2780
6. **REALTOR® ORGANIZATIONS PROHIBIT DISCRIMINATION:** NAR Code of Ethics Article 10 prohibits discrimination in employment practices or in rendering real estate license services against any person because of race, color, religion, sex, disability, familial status, national origin, sexual orientation, or gender identity by REALTORS®.
7. **WHO IS REQUIRED TO COMPLY WITH FAIR HOUSING LAWS?**
   Below is a non-exclusive list of providers of housing accommodations or financial assistance services as related to housing who are most likely to be encountered in a housing transaction and who must comply with fair housing laws.
   - Sellers
   - Real estate licensees
   - Mobilehome parks
   - Insurance companies
   - Landlords/Housing Providers
   - Real estate brokerage firms
   - Homeowners Associations ("HOAs");
   - Government housing services
   - Sublessors
   - Property managers
   - Banks and Mortgage lenders
   - Appraisers
8. **EXAMPLES OF CONDUCT THAT MAY NOT BE MOTIVATED BY DISCRIMINATORY INTENT BUT COULD HAVE A DISCRIMINATORY EFFECT:**
   A. Prior to acceptance of an offer, asking for or offering buyer personal information or letters from the buyer, especially with photos. Those types of documents may inadvertently reveal, or be perceived as revealing, protected status information thereby increasing the risk of (i) actual or unconscious bias, and (ii) potential legal claims against sellers and others by prospective buyers whose offers were rejected.
   B. Refusing to rent (i) an upper-level unit to an elderly tenant out of concern for the tenant's ability to navigate stairs or (ii) a house with a pool to a person with young children out of concern for the children's safety.
9. **EXAMPLES OF UNLAWFUL OR IMPROPER CONDUCT BASED ON A PROTECTED CLASS OR CHARACTERISTIC:**
   A. Refusing to negotiate for a sale, rental or financing or otherwise make a housing opportunity unavailable; failing to present offers due to a person's protected status;
   B. Refusing or failing to show, rent, sell or finance housing; "channeling" or "steering" a prospective buyer or tenant to or away from a particular area due to that person's protected status or because of the racial, religious or ethnic composition of the neighborhood;
   C. "Blockbusting" or causing "panic selling" by inducing a listing, sale or rental based on the grounds of loss of value of property, increase in crime, or decline in school quality due to the entry or prospective entry of people in protected categories into the neighborhood;
   D. Making any statement or advertisement that indicates any preference, limitation, or discrimination;

© 2023, California Association of REALTORS®, Inc.
**FHDA REVISED 6/23 (PAGE 1 OF 2)**



**FAIR HOUSING AND DISCRIMINATION ADVISORY (FHDA PAGE 1 OF 2)**

**E.** Inquiring about protected characteristics (such as asking tenant/applicants if they are married, or prospective purchasers if they have children or are planning to start a family);

**F.** Using criminal history information before otherwise affirming eligibility, and without a legally sufficient justification;

**G.** Failing to assess financial standards based on the portion of the income responsible by a tenant who receives government subsidies (such as basing an otherwise neutral rent to income ratio on the whole rent rather than just the part of rent that is the tenant's responsibility);

**H.** Denying a home loan or homeowner's insurance;

**I.** Offering inferior terms, conditions, privileges, facilities or services;

**J.** Using different qualification criteria or procedures for sale or rental of housing such as income standards, application requirements, application fees, credit analyses, sale or rental approval procedures or other requirements;

**K.** Harassing a person;

**L.** Taking an adverse action based on protected characteristics;

**M.** Refusing to permit a reasonable modification to the premises, as requested by a person with a disability (such as refusing to allow a tenant who uses a wheelchair to install, at their expense, a ramp over front or rear steps, or refusing to allow a tenant with a disability from installing, at their own expense, grab bars in a shower or bathtub);

**N.** Refusing to make reasonable accommodation in policies, rules, practices, or services for a person with a disability (such as the following, if an actual or prospective tenant with a disability has a service animal or support animal):

    **(i)** Failing to allow that person to keep the service animal or emotional support animal in rental property,

    **(ii)** Charging that person higher rent or increased security deposit, or

    **(iii)** Failing to show rental or sale property to that person who is accompanied by the service animal or support animal, and;

**O.** Retaliating for asserting rights under fair housing laws.

**10. EXAMPLES OF POSITIVE PRACTICES:**

**A.** Real estate licensees working with buyers or tenants should apply the same objective property selection criteria, such as location/neighborhood, property features, and price range and other considerations, to all prospects.

**B.** Real estate licensees should provide complete and objective information to all clients based on the client's selection criteria.

**C.** Real estate licensees should provide the same professional courtesy in responding to inquiries, sharing of information and offers of assistance to all clients and prospects.

**D.** Housing providers should not make any statement or advertisement that directly or indirectly implies preference, limitation, or discrimination regarding any protected characteristic (such as "no children" or "English-speakers only").

**E.** Housing providers should use a selection process relying on objective information about a prospective buyer's offer or tenant's application and not seek any information that may disclose any protected characteristics (such as using a summary document, e.g. C.A.R. Form SUM-MO, to compare multiple offers on objective terms).

**11. FAIR HOUSING RESOURCES:** If you have questions about your obligations or rights under the Fair Housing laws, or you think you have been discriminated against, you may want to contact one or more of the sources listed below to discuss what you can do about it, and whether the resource is able to assist you.

**A.** Federal: **https://www.hud.gov/program_offices/fair_housing_equal_opp**

**B.** State: **https://calcivilrights.ca.gov/housing/**

**C.** Local: local Fair Housing Council office (non-profit, free service)

**D.** DRE: **https://www.dre.ca.gov/Consumers/FileComplaint.html**

**E.** Local Association of REALTORS®. List available at: **https://www.car.org/en/contactus/rosters/localassociationroster.**

**F.** Any qualified California fair housing attorney, or if applicable, landlord-tenant attorney.

**12. LIMITED EXCEPTIONS TO FAIR HOUSING REQUIREMENTS: No person should rely on any exception below without first seeking legal advice about whether the exception applies to their situation. Real estate licensees are not qualified to provide advice on the application of these exceptions.**

**A.** Legally compliant senior housing is exempt from FHA, FEHA and Unruh as related to age or familial status only;

**B.** An owner of a single-family residence who resides at the property with one lodger may be exempt from FEHA for rental purposes, PROVIDED **no real estate licensee is involved** in the rental;

**C.** An owner of a single-family residence may be exempt from FHA for sale or rental purposes, PROVIDED **(i) no real estate licensee is involved** in the sale or rental and **(ii)** no discriminatory advertising is used, and **(iii)** the owner owns no more than three single-family residences. Other restrictions apply;

**D.** An owner of residential property with one to four units who resides at the property, may be exempt from FHA for rental purposes, PROVIDED **no real estate licensee is involved** in the rental;

**E.** Both FHA and FEHA do not apply to roommate situations. See, *Fair Housing Council v Roommate.com LLC*, 666 F.3d 1216 (2019).

**F.** Since both the 14th Amendment of the U.S. Constitution and the Civil Rights Act of 1866 prohibit discrimination based on race, the FHA and FEHA exemptions do not extend to discrimination based on race.

**Buyer/Tenant and Seller/Housing Provider have read, understand and acknowledge receipt of a copy of this Fair Housing & Discrimination Advisory.**

Buyer/Tenant _____ Date _____

Buyer/Tenant _____ Date _____

Seller/Housing Provider _Michael C. Alexander_ _____ *Michael C. Alexander* Date 12/15/2024
    Signed by:

Seller/Housing Provider _AADF4862EAF3406..._ _____ Date _____

© 2023, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020

**FHDA REVISED 6/23 (FHDA PAGE 2 OF 2)**



**FAIR HOUSING AND DISCRIMINATION ADVISORY (FHDA PAGE 2 OF 2)**



## CALIFORNIA CONSUMER PRIVACY ACT ADVISORY, DISCLOSURE AND NOTICE
### (C.A.R. Form CCPA, Revised 12/22)

The California Consumer Privacy Act (commencing with Civil Code § 1798.100) ("CCPA"), as amended by California voters in 2020, grants to California residents certain rights in their private, personal information ("PI") that is collected by companies with whom they do business. Under the CCPA, PI is defined broadly to encompass non-public records information that could reasonably be linked directly or indirectly to you. PI could potentially include photographs of, or sales information about, your property.

During the process of buying and selling real estate your PI will be collected and likely shared with others, including real estate licensees, a Multiple Listing Service, real estate internet websites, service providers, lenders, and title and escrow companies, to name several possibilities. Businesses that are covered by the CCPA are required to grant you various rights in your PI, including the right to know what PI is collected, the right to know what PI is sold or shared and to whom, the right to request that the business correct or delete your PI, the right to "opt out" or stop the transfer of your PI to others, and the right to limit the use of certain PI which is considered "sensitive." You may get one or more notices regarding your CCPA rights from businesses you interact with in a real estate transaction. However, not all businesses that receive or share your PI are obligated to comply with the CCPA. Moreover, businesses that are otherwise covered under the CCPA may have a legal obligation to maintain PI, notwithstanding your instruction to the contrary. For instance, regardless of whether they are covered by CCPA, under California law, brokers and Multiple Listing Services are required to maintain their records for 3 years. If you wish to exercise your rights under CCPA, where applicable, you should contact the respective business directly.

You can obtain more information about the CCPA and your rights under the law from the State of California Department of Justice (oag.ca.gov/privacy/ccpa). Additionally, the California Privacy Protection Agency is authorized to promulgate regulations which may further clarify requirements of the CCPA (cppa.ca.gov/regulations/).

**I/we acknowledge receipt of a copy of this California Consumer Privacy Act Advisory, Disclosure and Notice.**

Buyer/Seller/Landlord/Tenant _Michael C. Alexander_____ Date _12/15/2024_____

_Michael C. Alexander_

Buyer/Seller/Landlord/Tenant _____ Date _____

© 2022, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020



**CCPA REVISED 12/22 (PAGE 1 OF 1)**

**CALIFORNIA CONSUMER PRIVACY ACT ADVISORY (CCPA PAGE 1 OF 1)**

**EXHIBIT 2**

Attorney or Party Name, Address, Telephone & FAX
Numbers, State Bar Number & Email Address

Anerio Ventura Altman, Esq.
Bar Number: 228445
Lake Forest Bankruptcy
3070 Bristol Street, Suite 640
3070 Bristol Street, Suite 640 300
Costa Mesa, CA 92626
Phone: (949) 218-2002
Email: avaesq@lakeforestbkoffice.com

FOR COURT USE ONLY

☐ Debtor appearing without attorney
☑ Attorney for Debtor

# UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION

List all names (including trade names) used by Debtor
within the last 8 years.

In re:

Alexander, Michael Christian

Debtor(s).

CASE NUMBER: 2:25-bk-18382-VZ

CHAPTER 13

### CHAPTER 13 PLAN

☑ Original

☐        Amended*
*list below which sections have been changed:

[FRBP 3015(b); LBR 3015-1]

### 11 U.S.C. SECTION 341(a) CREDITORS' MEETING:
Date: 11/06/2025
Time: 9:00 AM
Address:  ZOOM.GOV

### PLAN CONFIRMATION HEARING: [LBR 3015-1(d)]
Date: 07/20/2026
Time: 10:00 AM
Address:  Crtrm 1368, 255 E Temple St., Los Angeles, CA 90012

---

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

> *"Bankruptcy Code" and "11 U.S.C." refer to the United States Bankruptcy Code, Title 11 of the United States Code.*
> *"FRBP" refers to the Federal Rules of Bankruptcy Procedure. "LBR" and "LBRs" refer to the Local Bankruptcy Rule(s) of this court.*

# Part 1: PRELIMINARY INFORMATION

**TO DEBTOR (the term "Debtor" includes and refers to both spouses as Debtors in a joint bankruptcy case):** This Chapter 13 Plan (Plan) sets out options that may be appropriate in some cases, but the presence of an option in this Plan does not indicate that the option is appropriate, or permissible, in your situation. A Plan that does not comply with local rules and judicial rulings may not be confirmable. You should read this Plan carefully and discuss it with your attorney if you have one. If you do not have an attorney, you may wish to consult one.

**TO ALL CREDITORS:** This Plan is proposed by Debtor and your rights may be affected by this Plan. Your claim may be reduced, modified, or eliminated. You should read this Plan carefully and discuss it with your attorney if you have one. If you do not have an attorney, you may wish to consult one.

***PLEASE NOTE THAT THE PROVISIONS OF THIS PLAN MAY BE MODIFIED BY ORDER OF THE COURT.***

If you oppose this Plan's treatment of your claim or any provision of this Plan, you or your attorney must file a written objection to confirmation of the Plan at least 14 days before the date set for the hearing on confirmation. However, the amounts listed on a proof of claim for an allowed secured or priority claim control over any contrary amounts listed in the Plan. The Bankruptcy Court may confirm this plan without further notice if no objection to confirmation is filed. *See* FRBP 3015. In addition, you must file a timely proof of claim in order to be paid under any plan. *See* LBR 3015-1 and FRBP 3002(a).

Defaults will be cured using the interest rate set forth below in the Plan.

**The following matters may be of particular importance to you:**

*Debtor must check one box on each line to state whether or not this Plan includes each of the following items. If an item is checked as "Not Included," if both boxes are checked, or neither box is checked, the item will be ineffective if set out later as a provision in this Plan.*

1.1  **Valuation of property and avoidance of a lien on property of the bankruptcy estate, set out in Class 3B and/or Section IV (11 U.S.C. § 506(a) and (d)):**
☐ Included    ☑ Not Included

1.2  **Avoidance of a judicial lien or nonpossessory, nonpurchase-money security interest, set out in Section IV (11 U.S.C. § 522(f)):**
☐ Included    ☑ Not Included

1.3  **Less than full payment of a domestic support obligation that has been assigned to a governmental unit, pursuant to 11 U.S.C. §1322(a)(4). This provision requires that payments in Part 2 Section I.A. be for a term of 60 months:**
☐ Included    ☑ Not Included

1.4  **Other Nonstandard Plan provisions, set out in Section IV:**
☑ Included    ☐ Not Included

**ALL CREDITORS ARE REQUIRED TO FILE A PROOF OF CLAIM IN ORDER TO HAVE AN ALLOWED CLAIM, EXCEPT AS PROVIDED IN FRBP 3002(a).** A Debtor whose Plan is confirmed may be eligible thereafter to receive a discharge of debts to the extent specified in 11 U.S.C. § 1328.

Regardless of whether this Plan treats a claim as secured or unsecured, any lien securing such claim is not avoided other than as provided by law or order of the court.

# Part 2: PLAN TERMS

Debtor proposes the following Plan terms and makes the following declarations:

## Section I. PLAN PAYMENT AND LENGTH OF PLAN

A.  Monthly Plan Payments will begin 30 days from the date the bankruptcy petition was filed. If the payment due date falls on the 29th, 30th, or 31st day of the month, payment is due on the 1st day of the following month (LBR 3015-1(k)(1)(A)).

---

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*April 2019*                    Page 2                    **F 3015-1.01.CHAPTER13.PLAN**

Payments by Debtor of:

_____$2,128.00_____ per month for months ___1___ through ___36___ totaling _____$76,608.00_____ .

For a total plan length of ___36___ months totaling _____$76,608.00_____ .

B.    Nonpriority unsecured claims.

The total amount of estimated non-priority unsecured claims is_____$133,330.00_____ .

1.    Unless otherwise ordered by the court, after Class 1 through Class 4 creditors are paid, allowed nonpriority unsecured claims that are not separately classified (Class 5) will be paid *pro rata* per the option checked below. If both options below are checked, the option providing the largest payment will be effective.

   a.    ☐    **"Percentage" plan:** _____ of the total amount of these claims, for an estimated total payment of_____.

   b.    ☑    **"Residual" plan:** The remaining funds, after disbursements have been made to all other creditors provided for in this Plan, estimated to pay a total of_____$47,134.12_ and _36%_ to claims in Class 5. The amount distributed to Class 5 claims may be less than the amount specified here depending on the amount of secured and priority claims allowed.

2.    Minimum Plan payments. Regardless of the options checked above, payments on allowed nonpriority unsecured claims will be made in at least the greater of the following amounts:

   a.    the sum of_____$0.00_____, representing the liquidation value of the estate in a hypothetical Chapter 7 case under 11 U.S.C. § 1325(a)(4), or

   b.    if Debtor has above-median income and otherwise subject to 11 U.S.C. § 1325(b), the sum of_____, representing all disposable income payable for 60 months under the means test.

C.    Income tax refunds. Debtor will provide the Chapter 13 Trustee with a copy of each income tax return filed during the Plan term within 14 days of filing the return and, unless the Plan provides 100% payment to nonpriority unsecured creditors (Class 5), will turn over to the Chapter 13 Trustee all federal and state income tax refunds received for the term of the plan. The Debtor may retain a total of $500 of the sum of the federal and state tax refunds for each tax year. Income tax refunds received by the debtor and turned over to the Chapter 13 Trustee or directly turned over to the Chapter 13 Trustee by the taxing authorities do not decrease the total amount of payments stated in Section I.A. above. The refunds are pledged to the plan in addition to the amounts stated in Section I.A. and can be used by the Chapter 13 Trustee to increase the percentage paid to general unsecured creditors without further order of the Bankruptcy Court.

D.    In the event that secured creditor(s) file a Notice of Postpetition Fees and Costs pursuant to FRBP 3002.1(c), the Chapter 13 Trustee is authorized, but not required, to commence paying those charges 90 days after that notice is filed, unless within that time the Debtor contests those charges by filing a motion to determine payment under FRBP 3002.1(e) or agrees to pay those charges by filing a motion to modify this Plan.

E.    Debtor must make preconfirmation adequate protection payments for any creditor that holds an allowed claim secured by personal property where such security interest is attributable to the purchase of such property and preconfirmation payments on leases of personal property whose allowed claim is impaired by the terms proposed in this Plan. Debtor must make preconfirmation adequate protection payments and preconfirmation lease payments to the Chapter 13 Trustee for the following creditor(s) in the following amounts:

| Creditor/Lessor Name | Collateral Description | Last 4 Digits of Account # | Amount |
|---|---|---|---|
| First Bank d/b/a First Bank Mortgage | 1100 square foot, 2 Bedroom, 2 bath<br>6435 Green Valley Cir Unit 214 Culver City, CA 90230-8075 | 2070 | $403.87 |
| California Credit Union | 1100 square foot, 2 Bedroom, 2 bath<br>6435 Green Valley Cir Unit 214 Culver City, CA 90230-8075 | 3246 | $272.78 |
| Royal Business Bank | 1100 square foot, 2 Bedroom, 2 bath<br>6435 Green Valley Cir Unit 214 Culver City, CA 90230-8075 | 5000 | $156.33 |

Each adequate protection payment or preconfirmation lease payment will accrue beginning the 30th day from the date of filing of the case. The Chapter 13 Trustee must deduct the foregoing adequate protection payment(s) and/or preconfirmation lease payment from Debtor's Plan Payment and disburse the adequate protection payment or preconfirmation lease payment to the secured creditor(s) at the next disbursement or as soon as practicable after the payment is received and posted to the Chapter 13 Trustee's account. The Chapter 13 Trustee will collect his or her statutory fee on all receipts made for preconfirmation adequate protection payments or preconfirmation lease payments.

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*April 2019*                                        Page 3                                        **F 3015-1.01.CHAPTER13.PLAN**

F.  Debtor must not incur debt greater than $1,000 without prior court approval unless the debt is incurred in the ordinary course of business pursuant to 11 U.S.C. §1304(b) or for medical emergencies.

G.  The Chapter 13 Trustee is authorized to disburse funds after the date Plan confirmation is announced in open court.

H.  Debtor must file timely all postpetition tax returns and pay timely all postconfirmation tax liabilities directly to the appropriate taxing authorities.

I.  Debtor must pay all amounts required to be paid under a Domestic Support Obligation that first became payable after the date of the filing of the bankruptcy petition.

J.  If the Plan proposes to avoid a lien of a creditor, the Chapter 13 Trustee must not disburse any payments to that creditor on that lien until the Plan confirmation order is entered.

K.  Debtor must pay all required ongoing property taxes and insurance premiums for all real and personal property that secures claims paid under the Plan.

## Section II. ORDER OF PAYMENT OF CLAIMS; CLASSIFICATION AND TREATMENT OF CLAIMS:

Except as otherwise provided in this Plan, the Chapter 13 Trustee must disburse all available funds for the payment of claims as follows:

A.  **ORDER OF PAYMENT OF CLAIMS:**

**1st**  If there are Domestic Support Obligations, the order of priority will be:

(a) Domestic Support Obligations and the Chapter 13 Trustee's fee not exceeding the amount accrued on Plan Payments made to date;

(b) Administrative expenses (Class 1(a)) until paid in full;

If there are no Domestic Support Obligations, the order of priority will be:

(a) The Chapter 13 Trustee's fee not exceeding the amount accrued on Plan Payments made to date;

(b) Administrative expenses (Class 1(a)) until paid in full.

**2nd**  Subject to the 1st paragraph, pro rata to all secured claims and all priority unsecured claims until paid in full except as otherwise provided in this Plan.

**3rd**  Non-priority unsecured creditors will be paid pro rata except as otherwise provided in this Plan. No payment will be made on nonpriority unsecured claims until all the above administrative, secured and priority claims have been paid in full unless otherwise provided in this Plan.

B.  **CLASSIFICATION AND TREATMENT OF CLAIMS:**

| CLASS 1 | | | |
|---|---|---|---|
| **ALLOWED UNSECURED CLAIMS ENTITLED TO PRIORITY UNDER 11 U.S.C. §507** | | | |
| Class 1 claims will be paid in full pro rata. Any treatment that proposes to pay claims in Class 1(a) or 1(b) less than in full must be agreed to in writing by the holder of each such claim and specifically addressed in Section IV.D. | | | |
| Unless otherwise ordered by the court, the claim amount stated on a proof of claim, and the dollar amount of any allowed administrative expense, controls over any contrary amount listed below. | | | |
| CATEGORY | AMOUNT OF PRIORITY CLAIM | INTEREST RATE, if any | TOTAL PAYMENT |
| a. Administrative Expenses | | | |
| (1) Chapter 13 Trustee's Fee – estimated at 11% of all payments to be made to all classes through this Plan. | | | |
| (2) Attorney's Fees | $7,000.00 | | $3,488.19 |
| (3) Chapter 7 Trustee's Fees | $0.00 | | $0.00 |
| (4) Other | | | |

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

| CATEGORY | AMOUNT OF PRIORITY CLAIM | INTEREST RATE, if any | TOTAL PAYMENT |
|---|---|---|---|
| (5) Other | | | |
| **b. Other Priority Claims** | | | |
| (1) Internal Revenue Service | $14,047 | 0.00% | $14,047 |
| (2) Franchise Tax Board | | | |
| (3) Domestic Support Obligation | | | |
| (4) Other | | | |

c.  Domestic Support Obligations that have been assigned to a governmental unit and are not to be paid in full in the Plan pursuant to 11 U.S.C. §1322(a)(4) (this provision requires that payments in Part 2 Section I.A. be for a term of 60 months)

   *(specify creditor name):*

| | | |
|---|---|---|
| | | |

---

## CLASS 2

### CLAIMS SECURED SOLELY BY PROPERTY THAT IS DEBTOR'S PRINCIPAL RESIDENCE ON WHICH OBLIGATION MATURES <u>AFTER</u> THE FINAL PLAN PAYMENT IS DUE

*Check one.*

☑   None. *If "None" is checked, the rest of this form for Class 2 need not be completed.*

☐   Debtor will maintain and make the current contractual installment payments on the secured claims listed below, with any changes required by the applicable contract and noticed in conformity with any applicable rules. Unless otherwise ordered by the court, these payments will be disbursed either by the Chapter 13 Trustee or directly by Debtor, as specified below. Debtor will cure the prepetition arrearages, if any, on a listed claim through disbursements by the Chapter 13 Trustee, with interest, if any, at the rate stated.

The arrearage amount stated on a proof of claim controls over any contrary amount listed below.

| NAME OF CREDITOR | LAST 4 DIGITS OF ACCOUNT NUMBER | AMOUNT OF ARREARAGE, IF ANY | INTEREST RATE | ESTIMATED MONTHLY PAYMENT ON ARREARAGE | ESTIMATED TOTAL PAYMENTS | POST-PETITION MORTGAGE PAYMENT DISBURSING AGENT |
|---|---|---|---|---|---|---|
| | | | | | $0.00 | ☐ Trustee<br>☐ Debtor |
| | | | | | $0.00 | ☐ Trustee<br>☐ Debtor |
| | | | | | $0.00 | ☐ Trustee<br>☐ Debtor |

---

## CLASS 3A

### UNIMPAIRED CLAIMS TO BE PAID DIRECTLY BY DEBTOR

*Check one.*

☐   **None.** *If "None" is checked, the rest of this form for Class 3A need not be completed.*

☑   Debtor will make regular payments, including any preconfirmation payments, directly to the following creditors in accordance with the terms of the applicable contract (Include Creditor Name and Last 4 Digits of Account Number):

_____

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

**Nissan Motor Acceptance Co LLC - 0001**

The claims of these creditors are unimpaired under the plan.

| CLASS 3B |
|---|

### CLAIMS SECURED BY REAL OR PERSONAL PROPERTY WHICH ARE TO BE BIFURCATED AND PAID IN FULL DURING THE TERM OF THIS PLAN.

*Check one.*

☑ **None.** *If "None" is checked, the rest of this form for Class 3B need not be completed.*

☐ Debtor proposes:

**Bifurcation of Claims - Dollar amounts/lien avoidance**. Except as provided below regarding bifurcation of claims into a secured part and an unsecured part, the claim amounts listed on a proof of claim control this Plan over any contrary amounts listed below.

(a) Bifurcated claims - secured parts: Debtor proposes that, for the purposes of distributions under this Plan, the dollar amount of secured claims in this Class 3B should be as set forth in the column headed "Secured Claim Amount." For that dollar amount to be binding on the affected parties, either

   (i) Debtor must obtain a court order granting a motion fixing the dollar amount of the secured claim and/or avoiding the lien, or

   (ii) Debtor must complete and comply with Part 2 Section IV.C., so that the Plan itself serves as such a motion; the "Included" boxes must be checked in Part 1 Paragraphs 1.1 and/or 1.2 (indicating that this Plan includes valuation and lien avoidance, and/or avoidance of a judicial lien or nonpossessory, nonpurchase-money lien in Section IV.C.); and this Plan must be confirmed - if any one of those conditions is not satisfied, then the claim will not be bifurcated into a secured part and an unsecured part pursuant to this sub-paragraph.

(b) Bifurcated claims - unsecured parts: Any allowed claim that exceeds the amount of the secured claim will be treated as a nonpriority unsecured claim in Class 5 below.

| NAME OF CREDITOR | LAST 4 DIGITS OF ACCOUNT NUMBER | CLAIM TOTAL | SECURED CLAIM AMOUNT | INTEREST RATE | ESTIMATED MONTHLY PAYMENT | ESTIMATED TOTAL PAYMENTS |
|---|---|---|---|---|---|---|
| | | | | | | |

| CLASS 3C |
|---|

### CLAIMS SECURED BY REAL OR PERSONAL PROPERTY WHICH ARE TO BE PAID IN FULL DURING THE TERM OF THIS PLAN (WITHOUT BIFURCATION), INCLUDING CURE OF ARREARS, IF APPLICABLE.

*Check all that apply.*

☐ **None.** *If "None" is checked, the rest of this form for Class 3C need not be completed.*

☑ Debtor proposes to treat the claims listed below as fully secured claims on the terms set forth below. These claims will not be bifurcated. The claim amounts listed on a proof of claim control this Plan over any contrary amounts listed below.

| IMPAIRED CLAIMS PAID THROUGH THE PLAN BY THE TRUSTEE | | | | | |
|---|---|---|---|---|---|
| NAME OF CREDITOR | LAST 4 DIGITS OF ACCOUNT NUMBER | CLAIM TOTAL | INTEREST RATE | ESTIMATED MONTHLY PAYMENT | ESTIMATED TOTAL PAYMENTS |
| First Bank d/b/a First Bank Mortgage | 2070 | $242,323.00 | 0% | $0 | $242,323 paid by Month 6 from sale of the home. |
| CURE AND MAINTAIN CLAIMS | | | | | |

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

| IMPAIRED CLAIMS PAID THROUGH THE PLAN BY THE TRUSTEE | | | | | |
|---|---|---|---|---|---|
| NAME OF CREDITOR | LAST 4 DIGITS OF ACCOUNT NUMBER | CLAIM TOTAL | INTEREST RATE | ESTIMATED MONTHLY PAYMENT | ESTIMATED TOTAL PAYMENTS |
| California Credit Union | | $163,669.00 | 0.00% | $0 | $163,669 paid by Month 6 by sale of the home. |
| Royal Business Bank | | $93,800.67 | 9.25% | $0 | $93,800.67 paid by Month 6 by sale of the home. |

| CURE AND MAINTAIN CLAIMS |
|---|

☑ Debtor will maintain and make the current contractual installment payments (Ongoing Payments) on the secured claims listed below pursuant to the terms of the applicable contract, except as stated otherwise in this Plan. These payments will be disbursed either by the Chapter 13 Trustee or directly by Debtor, as specified below. Debtor will cure and pay the prepetition arrearages, if any, on a claim listed below through disbursements by the Chapter 13 Trustee, with interest, if any, at the rate stated. The dollar amount of arrearage stated on a proof of claim controls over any contrary amount listed below.

| NAME OF CREDITOR | LAST 4 DIGITS OF ACCOUNT NUMBER | Cure of Default | | | | ONGOING PAYMENT DISBURSING AGENT |
|---|---|---|---|---|---|---|
| | | AMOUNT OF ARREARAGE, IF ANY | INTEREST RATE | ESTIMATED MONTHLY PAYMENT ON ARREARAGE | ESTIMATED TOTAL PAYMENTS | |
| Nissan Motor Acceptance Co LLC | 0001 | $447.45 | 0.00% | Mo. 1 - 5, $44.08 Mo. 6, $0.03 Mo. 7 - 36, $0.09 | $223.04 | ☑Trustee ☐Debtor |

| CLASS 3D |
|---|

### SECURED CLAIMS EXCLUDED FROM 11 U.S.C. §506

*Check one.*

☑ **None.** *If "None" is checked, the rest of this form for Class 3D need not be completed.*

☐ The claims listed below were either:

1. Incurred within 910 days before the petition date and secured by a purchase money security interest in a motor vehicle acquired for the personal use of Debtor, or

2. Incurred within 1 year of the petition date and secured by a purchase money security interest in any other thing of value.

These claims will be paid in full under this Plan with interest at the rate stated below. The claim amount stated on a proof of claim controls over any contrary amount listed below.

| NAME OF CREDITOR | LAST 4 DIGITS OF ACCOUNT NUMBER | CLAIM TOTAL | INTEREST RATE | ESTIMATED MONTHLY PAYMENT | ESTIMATED TOTAL PAYMENTS |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |

| CLASS 4 |
|---|

---

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

**OTHER CLAIMS ON WHICH THE LAST PAYMENT ON A CLAIM IS DUE AFTER THE DATE ON WHICH THE FINAL PLAN PAYMENT IS DUE, WHICH ARE PROVIDED FOR UNDER 11 U.S.C. §1322(b)(5)**

*Check one.*

☑ **None.** *If "None" is checked, the rest of this form for Class 4 need not be completed.*

☐ **Debtor will maintain and make the current contractual installment payments (Ongoing Payments) on the secured claims listed below pursuant to the terms of the applicable contract, except as stated otherwise in this Plan. These payments will be disbursed either by the Chapter 13 Trustee or directly by Debtor, as specified below. Debtor will cure and pay the prepetition arrearages, if any, on a claim listed below through disbursements by the Chapter 13 Trustee, with interest, if any, at the rate stated. The dollar amount of arrearage stated on a proof of claim controls over any contrary amount listed below.**

| NAME OF CREDITOR | LAST 4 DIGITS OF ACCOUNT NUMBER | Cure of Default | | | | ONGOING PAYMENT DISBURSING AGENT |
| | | AMOUNT OF ARREARAGE, IF ANY | INTEREST RATE | ESTIMATED MONTHLY PAYMENT ON ARREARAGE | ESTIMATED TOTAL PAYMENTS | |
| --- | --- | --- | --- | --- | --- | --- |
| | | | | | | ☐ Trustee<br>☐ Debtor |
| | | | | | | ☐ Trustee<br>☐ Debtor |
| | | | | | | ☐ Trustee<br>☐ Debtor |

## CLASS 5A

### NON-PRIORITY UNSECURED CLAIMS NOT SEPARATELY CLASSIFIED

Allowed nonpriority unsecured claims not separately classified must be paid pursuant to Section I.B. above.

### SEPARATE CLASSIFICATION:

*Check all that apply if Debtor proposes any separate classification of nonpriority unsecured claims.*

☑ **None.** *If "None" is checked, the rest of this form for Class 5 need not be completed.*

## CLASS 5B

☐ **Maintenance of payments.** Debtor will maintain and make the contractual installment payments on the unsecured claims listed below on which the last payment is due after the final Plan payment. The contractual installment payments will be disbursed by Debtor.

| NAME OF CREDITOR | LAST 4 DIGITS OF ACCOUNT NUMBER | INTEREST RATE | ESTIMATED MONTHLY PAYMENT | ESTIMATED TOTAL PAYMENTS |
| --- | --- | --- | --- | --- |
| | | | | |

## CLASS 5C

☐ **Other separately classified nonpriority unsecured claims.**

| NAME OF CREDITOR | LAST 4 DIGITS OF ACCOUNT NUMBER | AMOUNT TO BE PAID ON THE CLAIM | INTEREST RATE (if applicable) | ESTIMATED TOTAL AMOUNT OF PAYMENTS |
| --- | --- | --- | --- | --- |
| | | | | |

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

## CLASS 6

### SURRENDER OF COLLATERAL

*Check one.*

☑ **None.** *If "None" is checked, the rest of this form for Class 6 need not be completed.*

☐ Debtor elects to surrender to each creditor listed below the collateral that secures the creditor's claim. Debtor requests that upon confirmation of the Plan the stay under 11 U.S.C. § 362(a) be terminated as to the collateral only and that the stay under 11 U.S.C. §1301 be terminated in all respects. Any allowed unsecured claim resulting from the disposition of the collateral will be treated in Class 5 above.

| Creditor Name: | Description: |
|---|---|
|  |  |
|  |  |

## CLASS 7

### EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Any executory contracts or unexpired leases not listed below are deemed rejected.

*Check one.*

☐ **None.** *If "None" is checked, the rest of this form for Class 7 need not be completed.*

☑ The executory contracts and unexpired leases listed below are treated as specified (*identify the contract or lease at issue and the other party(ies) to the contract or lease*):

Creditor Name: **John Holmes**

Description: **Other - Real Estate Sales Contract Contract to be REJECTED**

  ☑ **Rejected**          ☐ Assumed; cure amount (if any):_____, to be
                                                          paid over_____months

Creditor Name: **Strategic Legal Practices**

Description: **Other - "Lemon Law" Counsael Contract to be ASSUMED Party is paid by fee shifting statute, not the Debtor**

  ☐ Rejected          ☑ Assumed; cure amount (if any): _____, to be
                                                          paid over_____36_____months

**Payments to be cured within_____months of filing of the bankruptcy petition. All cure payments will be made through disbursements by the Chapter 13 Trustee.**

## Section III. PLAN SUMMARY

| | |
|---|---|
| **CLASS 1a** | $7,000 |
| **CLASS 1b** | $14,047 |
| **CLASS 1c** | $0.00 |
| **CLASS 2** | $0.00 |
| **CLASS 3B** | $0.00 |
| **CLASS 3C** | $0.00 |
| **CLASS 3D** | $0.00 |
| **CLASS 4** | $0.00 |

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*April 2019*                          Page 9                          F 3015-1.01.CHAPTER13.PLAN

| CLASS 5A | $0.00 |
|---|---|
| CLASS 5C | $0.00 |
| CLASS 7 | $0.00 |
| SUB-TOTAL | $47,134.12 |
| **CHAPTER 13 TRUSTEE'S FEE** (Estimated 11% unless advised otherwise) | $8,426.88 |
| **TOTAL PAYMENT** | **$76,608.00** |

## Section IV. NON-STANDARD PLAN PROVISIONS

☐  **None.** *If "None" is checked, the rest of Section IV need not be completed.*

**Pursuant to FRBP 3015(c), Debtor must set forth all nonstandard Plan provisions in this Plan in this separate Section IV of this Plan and must check off the "Included" box or boxes in Paragraphs 1.1, 1.2, 1.3 and/or 1.4 of Part 1 of this Plan. Any nonstandard Plan provision that does not comply with these requirements is** _ineffective_ . A nonstandard Plan provision means any Plan provision not otherwise included in this mandatory Chapter 13 Plan form, or any Plan provision deviating from this form.

**The nonstandard Plan provisions seeking modification of liens and security interests address only those liens and security interests known to Debtor, and known to be subject to avoidance, and all rights are reserved as to any matters not currently known to Debtor.**

☐  A.  <u>Debtor's Intent to File Separate Motion to Value Property Subject to Creditor's Lien or Avoid Creditor's Lien [11 U.S.C. § 506(a) and (d)]</u>.  Debtor will file motion(s) to value real or personal property of the bankruptcy estate and/or to avoid a lien pursuant to 11 U.S.C § 506(a) and (d), as specified in **Attachment A.**

☐  B.  <u>Debtor's Intent to File Separate Motion to Avoid Creditor's Judicial Lien or Nonpossessory, Nonpurchase Security Interest [11 U.S.C. § 522(f)]</u>. Debtor will file a Motion to avoid a judicial lien or nonpossessory, nonpurchase-money security interest, on real or personal property of the bankruptcy estate listed below pursuant to 11 U.S.C § 522(f). If the court enters an order avoiding a lien under 11 U.S.C. § 522(f), the Chapter 13 Trustee will not pay any claim filed based on that lien as a secured claim.

Name of Creditor Lienholder/Servicer: _____

Description of lien and collateral (*e.g.*, 2nd lien on 123 Main St.): _____

Name of Creditor Lienholder/Servicer: _____

Description of lien and collateral (*e.g.*, 2nd lien on 123 Main St.): _____

☐  C.  <u>Debtor's Request in this Plan to Modify Creditor's Secured Claim and Lien.</u>  Debtor proposes to modify the following secured claims and liens in this Plan <u>without</u> a separate motion or adversary proceeding - this Plan will serve as the motion to value the collateral and/or avoid the liens as proposed below. **To use this option, Debtor must serve this Plan, LBR Form F 3015-1.02.NOTICE.341.LIEN.CONFRM and all related exhibits as instructed in that form. Note: Not all Judges will grant motions to value and/or avoid liens through this Plan. Please consult the specific Judge's Instructions/Procedures on the court's website for more information.**

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*April 2019*                                    Page 10                                    **F 3015-1.01.CHAPTER13.PLAN**

**DEBTOR'S REQUEST TO MODIFY CREDITOR'S SECURED CLAIM AND LIEN**

**TO CREDITOR LIENHOLDER/SERVICER**

☐ Real property collateral (street address and/or legal description or document recording number, including county of recording):

(attach page with legal description of property or document recording number as appropriate).

☐ Other collateral (add description such as judgment date, date and place of lien recording, book and page number):

☐ 11 U.S.C. § 522(f) – Debtor seeks avoidance of your lien(s) on the above described collateral effective immediately upon issuance of the order confirming this Plan.

☐ 11 U.S.C. § 506(a) and (d) – Debtor seeks avoidance of your lien(s) on the above described collateral that will be effective upon the earliest to occur of either payment of the underlying debt determined under nonbankruptcy law or one of the following:

(check all that apply and see LBR Form F 4003-2.4.ORDER.AFTERDISCH):

☐ (1) discharge under 11 U.S.C. § 1328, or

☐ (2) Upon completion of all Plan payments.

Value of collateral: ...............................................................................................................................................

Liens reducing equity (to which subject lien can attach):

_____ + _____ + _____ = ( _____ )

Exemption (only applicable for lien avoidance under 11 U.S.C. § 522(f)): ...................................... ( _____ )

Wherefore, Debtor requests that this court issue an order granting the foregoing property valuation and/or lien avoidance of the above-listed creditor on the above-described collateral in the form _Attachment B, C and/or D_ to this Plan, as applicable. (**Debtor must use and attach a separate Attachment B, C and/or D which are also mandatory court forms for modification of each secured claim and lien.**)

Amount of remaining secured claim (negative results should be listed as $-0-): ...............................................................

Note: See other parts of this Plan for the proposed treatment of any remaining secured claim (generally Class 3).

☑ D.   **Other Non-Standard Plan Provisions** (use attachment, if necessary):

<u>Sale of Real Property</u>
The Debtor will be selling his real property at the beginning of the case but no later than Month 6 of the plan. During this time he will be making adequate protection payments to the secured lenders, but will not be making the mortgage payments.

# V. REVESTING OF PROPERTY

Property of the bankruptcy estate will not revest in Debtor until a discharge is granted or the case is dismissed or closed without discharge. Revesting will be subject to all liens and encumbrances in existence when the case was filed, except those liens avoided by court order or extinguished by operation of law. In the event the case is converted to a case under Chapter 7, 11, or 12 of the Bankruptcy Code, the property of the estate will vest in accordance with applicable law. After confirmation of this Plan, the Chapter 13 Trustee will not have any further authority or fiduciary duty regarding use, sale, or refinance of property of the estate except to respond to any motion for proposed use, sale, or refinance as required by the LBRs. Prior to any discharge or dismissal, Debtor must seek approval of the court to purchase, sell, or refinance real property.

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

April 2019                                    Page 11                              F 3015-1.01.CHAPTER13.PLAN

By filing this document, the Attorney for Debtor, or Debtor if not represented by an attorney, also certify(ies) that the wording and order of the provisions in this Plan are identical to those contained in the Central District of California Chapter 13 Plan other than any nonstandard Plan provisions included in Section IV.

Date:     09/28/2025

/s/ Anerio Ventura Altman, Esq.

Anerio Ventura Altman, Esq.
Attorney for Debtor

Michael Christian Alexander
Debtor 1

Debtor 2

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

April 2019                                          Page 12                              F 3015-1.01.CHAPTER13.PLAN

## ATTACHMENT A to Chapter 13 Plan/Confirmation Order
### (11 U.S.C. §§ 506: valuation/lien avoidance by separate motion(s))

☑ **None.** *If "None" is checked, the rest of this Attachment A need not be completed.*

**1. Creditor Lienholder/Servicer:** _____
    **Subject Lien** (*e.g.*, 2nd lien on 123 Main St.): _____

**2. Creditor Lienholder/Servicer:** _____
    **Subject Lien** (*e.g.*, 2nd lien on 123 Main St.): _____

**3. Creditor Lienholder/Servicer:** _____
    **Subject Lien** (*e.g.*, 2nd lien on 123 Main St.): _____

**4. Creditor Lienholder/Servicer:** _____
    **Subject Lien** (*e.g.*, 2nd lien on 123 Main St.): _____

**5. Creditor Lienholder/Servicer:** _____
    **Subject Lien** (*e.g.*, 2nd lien on 123 Main St.): _____

**6. Creditor Lienholder/Servicer:** _____
    **Subject Lien** (*e.g.*, 2nd lien on 123 Main St.): _____

**7. Creditor Lienholder/Servicer:** _____
    **Subject Lien** (*e.g.*, 2nd lien on 123 Main St.): _____

**8. Creditor Lienholder/Servicer:** _____
    **Subject Lien** (*e.g.*, 2nd lien on 123 Main St.): _____

**9. Creditor Lienholder/Servicer:** _____
    **Subject Lien** (*e.g.*, 2nd lien on 123 Main St.): _____

**CERTIFICATION:** I have prepared this attachment (including any additional pages) for use by the Chapter 13 Trustee. I certify under penalty of perjury under the laws of the United States of America that the information provided in this attachment is accurate to the best of my knowledge after reasonable inquiry, and I acknowledge that the Chapter 13 Trustee has no duty to verify the accuracy of that information.

Executed on (*date*)_____**09/28/2025**_____

*Printed Name*_____**Anerio Ventura Altman, Esq.**_____    *Signature:*_____**/s/ Anerio Ventura Altman, Esq.**_____

☑ Attorney for Debtor or    ☐ Debtor appearing without attorney

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*April 2019*                                Page 13                                **F 3015-1.01.CHAPTER13.PLAN**

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

26632 Towne Centre Drive #300, Foothill Ranch, CA 92610

A true and correct copy of the foregoing document entitled (*specify*):

Chapter 13 Plan

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

### 1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF): Pursuant to controlling General Orders
and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) ___09/28/2025___, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Anerio V Altman aaltman@ecf.courtdrive.com, lakeforestpacer@gmail.com
Nancy K Curry (TR) inquiries@trusteecurry.com, TrusteeECFMail@gmail.com
Marcus G Tiggs mtiggs@lawbwl.com, bribwl@gmail.com;18631@notices.nextchapterbk.com
United States Trustee (LA) ustpregion16.la.ecf@usdoj.gov

☐ Service information continued on attached page

### 2. SERVED BY UNITED STATES MAIL:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

### 3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method
for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 09/28/2025 | Anerio Ventura Altman, Esq. | /s/ Anerio Ventura Altman, Esq. |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**

**EXHIBIT 3**

# ◣◥ Gmail

## Michael Alexander
8 messages

---

**Anerio V. Altman, Esq. #228445** <avaesq@lakeforestbkoffice.com>    Mon, Sep 29, 2025 at 4:50 PM
To: "Derik N. Lewis, Attorney | Realtor" <Derik@lawyersrealtygroup.com>, John Holmes <agent@lawyersrealtygroup.com>
Bcc: Michael Alexander <MCAKOLLC@gmail.com>

Derik:

Michael filed BK again because he had a foreclosure pending the next day.  He wants to go with another realtor.  I'm sorry, I spoke well of you, but that is the client's interest.  Your contract with him is being rejected as part of the plan.  Please release the listing.

I try to do well by you when I can, but I couldn't assuage Michael's concerns.  I'm sorry, but this is done.  Please do not make this an issue.

--
"Live Debt Free Again"
Anerio V. Altman, Esq.
California State Bar License #228445
Washington State Bar License #62501
26632 Towne Centre Drive #300
Foothill Ranch, CA 92610
Phone and Fax:  (949) 218-2002
www.lakeforestbankruptcy.com

We are a debt relief agency.  We help people file bankruptcy under the bankruptcy code.

This communication is for the intended recipient only. This communication may contain information that is privileged, confidential and exempt from disclosure under applicable law and constitutes an electronic communication within the meaning of the Electronic Communications Privacy Act, 18 U.S.C. 2510. If you are not the intended recipient, you are hereby notified that any unauthorized use, dissemination, distribution or copying of this communication is strictly prohibited and may subject you to criminal or civil penalty. If you have received this communication in error, please notify us immediately by email, delete the message, and destroy any copies.

---

**derik@lawyersrealtygroup.com** <derik@lawyersrealtygroup.com>    Mon, Sep 29, 2025 at 5:33 PM
To: "Anerio V. Altman, Esq. #228445" <avaesq@lakeforestbkoffice.com>, John Holmes <agent@lawyersrealtygroup.com>

We've worked our asses off.  I'm not cancelling... I'll wait.
[Quoted text hidden]

---

**derik@lawyersrealtygroup.com** <derik@lawyersrealtygroup.com>    Mon, Sep 29, 2025 at 5:34 PM
To: "Anerio V. Altman, Esq. #228445" <avaesq@lakeforestbkoffice.com>, John Holmes <agent@lawyersrealtygroup.com>

It's an issue, lol...!

-------- Original message --------
From: "Anerio V. Altman, Esq. #228445" <avaesq@lakeforestbkoffice.com>
Date: 9/29/25 5:50 PM (GMT-07:00)
To: "Derik N. Lewis, Attorney | Realtor" <Derik@lawyersrealtygroup.com>, John Holmes <agent@lawyersrealtygroup.com>
Subject: Michael Alexander

[Quoted text hidden]

---

**derik@lawyersrealtygroup.com** <derik@lawyersrealtygroup.com>                        Mon, Sep 29, 2025 at 5:34 PM
To: "Anerio V. Altman, Esq. #228445" <avaesq@lakeforestbkoffice.com>, John Holmes <agent@lawyersrealtygroup.com>

Who's the trustee?

-------- Original message --------
From: derik@lawyersrealtygroup.com
Date: 9/29/25 6:33 PM (GMT-07:00)
To: "Anerio V. Altman, Esq. #228445" <avaesq@lakeforestbkoffice.com>, John Holmes <agent@lawyersrealtygroup.com>
Subject: RE: Michael Alexander

We've worked our asses off.  I'm not cancelling... I'll wait.


[Quoted text hidden]

---

**Anerio V. Altman, Esq. #228445** <avaesq@lakeforestbkoffice.com>                    Mon, Sep 29, 2025 at 5:51 PM
To: "derik@lawyersrealtygroup.com" <derik@lawyersrealtygroup.com>
Cc: John Holmes <agent@lawyersrealtygroup.com>

Chapter 13 Trustee Nancy Curry.
This is not a 7.
The Debtor enjoys the full ability to exercise the rights of the Trustee to reject executory contracts.  If you are not
cancelling that listing, you will be interfering with the estate and in violation of the automatic stay.
You can file a Proof of Claim for rejection of damages.  That is your right.
However you interfere with Michael's rights I have to take action here.  I have a duty to the court first, the client second
and bros third.  Please do not push this.  I'm sorry but this is what it is.
[Quoted text hidden]

---

**derik@lawyersrealtygroup.com** <derik@lawyersrealtygroup.com>                        Mon, Sep 29, 2025 at 5:57 PM
To: "Anerio V. Altman, Esq. #228445" <avaesq@lakeforestbkoffice.com>
Cc: John Holmes <agent@lawyersrealtygroup.com>

I'm wait...  :)
[Quoted text hidden]

---

**derik@lawyersrealtygroup.com** <derik@lawyersrealtygroup.com>                        Mon, Sep 29, 2025 at 5:58 PM
To: "Anerio V. Altman, Esq. #228445" <avaesq@lakeforestbkoffice.com>
Cc: John Holmes <agent@lawyersrealtygroup.com>

His plan will not work

-------- Original message --------
From: "Anerio V. Altman, Esq. #228445" <avaesq@lakeforestbkoffice.com>
Date: 9/29/25 6:52 PM (GMT-07:00)
To: derik@lawyersrealtygroup.com
Cc: John Holmes <agent@lawyersrealtygroup.com>
Subject: Re: Michael Alexander

[Quoted text hidden]

---

**derik@lawyersrealtygroup.com** <derik@lawyersrealtygroup.com>                        Mon, Sep 29, 2025 at 6:04 PM
To: "Anerio V. Altman, Esq. #228445" <avaesq@lakeforestbkoffice.com>
Cc: John Holmes <agent@lawyersrealtygroup.com>

I'm not taking any action on collection but I don't have to voluntarily terminate my listing until there's a formal rejection of
my contract.  I'll file a proof of claim and you guys can go ahead and seek rejection.

We've just done too much work to just lay down and let some other realtor steam roll us without Court approval or
oversight.

I think we have 90 days after the first meeting of creditors to file a proof of claim.  Doesn't look like anything's happening for a while on this then.

I understand that you have to do your job but don't ask me to do something I don't have to do before it's legally required.


-------- Original message --------
From: "Anerio V. Altman, Esq. #228445" <avaesq@lakeforestbkoffice.com>
Date: 9/29/25 6:52 PM (GMT-07:00)
To: derik@lawyersrealtygroup.com
Cc: John Holmes <agent@lawyersrealtygroup.com>
Subject: Re: Michael Alexander

[Quoted text hidden]